522 So.2d 348 (1988)
Eric Brian HOLSWORTH, Appellant,
v.
STATE of Florida, Appellee.
No. 67973.
Supreme Court of Florida.
February 18, 1988.
Rehearing Denied April 18, 1988.
*349 H. Dohn Williams, Jr., Sp. Public Defender of H. Dohn Williams, Jr., P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., and Noel A. Pelella and Penny H. Brill, Asst. Attys. Gen., West Palm Beach, for appellee.
BARKETT, Justice.
Eric Brian Holsworth appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm as to guilt but reduce his sentence to life in accordance with the jury's recommendation.
On June 9, 1984, Alice Dzikowski and her mother Gloria Salerno were attacked in their mobile home. Alice was on the couch in the living room when Gloria went to bed in a back bedroom. Shortly after midnight, Gloria was awakened by her daughter's screams from the living room. When she ran to her daughter's aid, Mrs. Salerno was grabbed from behind by appellant, who placed his hand over her mouth, brandished a knife, and said, "I'll get you bitch  I'll get you mama." Mrs. Salerno struggled, breaking the knife with her hand. Appellant grabbed another knife from the kitchen and continued to slash at Mrs. Salerno. After wounding her, appellant ran away from the trailer. Gloria Salerno received stab wounds to her arms, hands, lung, chest, and face as well as a severed tendon in her thumb. Alice Dzikowski received multiple stab wounds, including a five-inch wound to the heart that killed her. Appellant was arrested several months later in California during a routine traffic stop and returned to Florida for trial.
At trial, Mrs. Salerno positively identified appellant as the assailant. Penny Lindsey, who lived nearby, testified that she saw *350 appellant covered in blood near her trailer approximately one hour after the murder. Further testimony at the trial revealed that appellant had quit his job the day after the murder and left town, saying that he was "going up north," that he was "in trouble" and had done "a stupid thing." Fingerprints identified as appellant's were found on a back bedroom window at the victims' trailer, the apparent point of entry and exit, and on one of the two knives used in the attack. Finding appellant guilty of attempted first-degree murder, armed burglary, and first-degree murder, the jury recommended life imprisonment on the murder charge. Overriding the jury's recommendation, the trial court sentenced appellant to death.
Appellant challenges his conviction on six grounds. First, appellant argues that the trial court erred in denying his motion for change of venue. The motion was prompted by a newspaper article which appeared in the Miami Herald, containing appellant's picture and reporting his confession, including parts of it that were suppressed. One of the prospective jurors was seen reading the newspaper (not the article) prior to jury selection. To further support his argument, appellant notes that an associate publisher of the Miami Herald subsequently was seated on the jury. Appellant contends that under these facts, automatic reversal is required under Oliver v. State, 250 So.2d 888 (Fla. 1971). We disagree and take this opportunity to clarify Oliver.[1]
Generally, the test to determine whether a change of venue is required is
"whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom."
McCaskill v. State, 344 So.2d 1276, 1278 (Fla. 1977) (quoting Kelley v. State, 212 So.2d 27, 28 (Fla. 2d DCA 1968)). In order to meet this test, the defendant must establish that the general atmosphere of the community was deeply hostile to him, which can be demonstrated either by inflammatory publicity or great difficulty in selecting a jury. Copeland v. State, 457 So.2d 1012, 1017 (Fla. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985). Given this general rule, appellant contends that a special rule relating to confessions was established in Oliver, to wit, that the requisite showing of hostility must be presumed whenever "a `confession' is featured in news media coverage of a prosecution" and that "the voir dire process cannot cure the effect of a `confession' which has been given news media coverage." 250 So.2d at 890.
In Oliver, the sole daily newspaper in the area published a transcript of Oliver's confession in which he implicated himself and others, expressly stated that he had a motive for the crime, and gave a description of it. Moreover, Oliver dealt with a crime by a black man against a white woman during a period of racial unrest. On those facts, this Court found error without proof that members of the jury had seen the confession or been prejudiced by it.
This Court's holding in Oliver, however, has long since been "restricted and refined." See Straight v. State, 397 So.2d 903, 906 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); Hoy v. State, 353 So.2d 826, 830-31 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). In Hoy, this Court declined to apply Oliver, noting that a retraction of the confession had also been published, the area in question was not dependent on a sole daily newspaper, and there was no evidence that any of the jurors read the article in question. In Straight, we again rejected the argument that the rule in Oliver required a change of *351 venue solely because of publicity surrounding a confession. We noted that
the case received considerable media attention and .. . knowledge of the murder was widespread. Four-fifths of the prospective jurors, and eight of the twelve jurors who served on the jury, had some prior knowledge of the case. The crucial consideration, however, is not knowledge, but whether such knowledge rendered the jurors prejudiced.

397 So.2d at 905-06 (emphasis added). Despite the widespread publicity in that case, we held that Oliver did not require reversal because
[t]he trial judge here presided over a long and painstaking voir dire procedure. The record shows that prospective jurors exhibiting even a hint of prejudice were excused. The court granted the appellant extra peremptory challenges and defense counsel did not use them all.
Straight, 397 So.2d at 906.
Thus, our cases since Oliver implicitly have held that publicity about a confession, standing alone, is not per se grounds for the granting of a change of venue. Although publicity about a confession may be inflammatory, the defendant still must demonstrate that the publicity was prejudicial either by evidence that the particular jury was affected or by evidence that the "general state of mind of the inhabitants of the community was so infected" that a fair trial could not be obtained. The critical factor where there is pretrial publicity of any kind is "the extent of the prejudice or lack of impartiality among potential jurors that may accompany the knowledge of the incident." Provenzano v. State, 497 So.2d 1177, 1182 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987).
Turning to the facts of this case, we note initially that the trial court's ruling on a motion for change of venue will be upheld absent a manifest abuse of discretion. Davis v. State, 461 So.2d 67 (Fla. 1984); Johnson v. State, 351 So.2d 10 (Fla. 1977).
The record shows that the trial court denied the motion for change of venue because the jury selection process had not yet begun and there was no evidence that any of the potential jurors had even read the article in question. The only basis for defendant's motion was the presence of the newspaper in the jury assembly room, that is, the room occupied by the entire jury pool for the Broward County courts. In ruling on the motion, the trial court stated that any potential juror exposed to the Miami Herald article or any other press coverage of the case would be excused for cause. In fact, two prospective jurors who had been exposed to press coverage of the case were so excused.
As to appellant's arguments concerning the juror who was an associate editor of the Miami Herald, we fail to see a connection between this juror and the motion for change of venue since the motion was denied prior to seating her. Appellant could have exercised a peremptory challenge to excuse her but chose not to do so. Appellant cannot now complain in light of his acquiescence in her selection. Moreover, we cannot agree with appellant that because this juror was an associate editor of the Miami Herald, we must presume that she read the article concerning appellant's trial. This contention is factually refuted by this juror's unequivocal statements on voir dire that she avoided reading newspapers during the venire process and did not know or read anything about the case. We note, too, that the members of the jury, who at defense counsel's request were questioned a number of times throughout the trial about their exposure to media coverage of the case, repeatedly responded that they had not read or heard anything about it outside the courtroom.
Appellant has shown no evidence that even one of the jurors sitting on the case was exposed to any press coverage pertaining to the defendant nor any evidence of difficulty in selecting an impartial jury. In sum, the record fails to support any claim of prejudice. We find no abuse of discretion.
Appellant next argues that the trial court erred in refusing to allow the testimony of defense expert Dr. Antonio Varsida during the guilt phase of the trial on the issue of the affirmative defense of voluntary intoxication. *352 Dr. Varsida would have testified that appellant's ingestion of alcohol and PCP on the night of the crime impaired his "psychological functioning," and, as a result, he lacked the specific intent to commit murder. We find the proffered testimony properly excluded for two reasons.
First, although Dr. Varsida interviewed appellant on July 10, 1985, the state did not receive formal notice of intent to rely on the defense of voluntary intoxication until Dr. Varsida's testimony was proffered on July 31, 1985. Moreover, the defense conceded that it misled the state by indicating that Dr. Varsida would not be called during the guilt phase of the trial. The state was thereby precluded from obtaining witnesses to rebut Dr. Varsida's testimony.
Second, expert testimony and opinion as to the effect of intoxicants on a defendant's mind are inadmissible absent some proof of ingestion other than the defendant's hearsay statements to the expert. Cirack v. State, 201 So.2d 706, 708-10 (Fla. 1967); Johnson v. State, 478 So.2d 885, 886-87 (Fla. 3d DCA 1985). See also Jones v. State, 289 So.2d 725, 728-29 (Fla. 1979). Here, the primary basis for Dr. Varsida's proffered opinion was appellant's out-of-court statement to Dr. Varsida that he had been drinking alcohol, smoking marijuana, and taking PCP the night of the crime. The only other evidence in the record was Gloria Salerno's statement that she thought she smelled beer on appellant's breath. Under these circumstances, the trial court did not err in precluding Dr. Varsida's testimony.
Appellant's third point is that his right to due process of law was violated because Gloria Salerno's in-court identification was tainted by unreliable out-of-court proceedings. We disagree. The test for evaluating such claims is whether the police employed a procedure so impermissively suggestive as to give rise to a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Grant v. State, 390 So.2d 341 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).
We do not find in this case any indication of suggestive police methods which might have "tainted" Mrs. Salerno's identification of appellant. Mrs. Salerno was shown a photo display in which she identified three possible suspects, one of whom was appellant. Appellant's photograph was number five. Mrs. Salerno then viewed a live lineup in which appellant, again at position five, was the only one of the persons viewed who had also appeared in the previous photo display. For the live lineup, the suspects were given eyeglasses, allowed to position themselves as they liked, and allowed to exchange clothing. We do not find that either of these procedures was conducted in an unreasonably suggestive manner. Furthermore, Mrs. Salerno testified that she had ample opportunity to observe appellant during the crime. Under these circumstances, we agree with the trial court that the procedures used in this case did not give rise to a substantial likelihood of misidentification.
We also find no merit in appellant's fourth contention that the trial court erred in failing to suppress two statements made by Holsworth to the California and Florida police authorities during his arrest and transportation to Florida. We have reviewed the record and determined that the statements in issue were voluntarily made and not elicited by any police interrogation.
Appellant's fifth contention of error as to his conviction concerns the admission of collateral crime evidence under the Williams rule. See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); § 90.404(2)(a), Fla. Stat. (1985). We find no error. Testimony was admitted that three years earlier, appellant had entered the trailer of another woman in the same trailer park. Both the collateral crime and the instant offense were committed within two thousand feet of each other and within the same distance of Holsworth's residence at *353 the time of each crime; both occurred in the early morning hours; both involved women asleep in house trailers and surreptitious entry; in both the assailant covered the mouths of his victims, battered and threatened them in response to their screams, and then quickly fled the same way he had entered. Such similarities in the plan or scheme of two crimes can be used to show the identity of the perpetrator. See Mason v. State, 438 So.2d 374, 377 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Such evidence is not inadmissible merely because it points to another crime. Williams.
We likewise find no merit in appellant's final challenge to his conviction. Appellant argues that the trial court improperly responded to the following question posed by the jury during its deliberations:
Is it possible to find the Defendant guilty of felonious First Degree Murder without "premeditated design?" The law reads felony First degree does not require a finding of premeditated design, yet, the charge refers to the indictment which uses both "feloniously" and "premeditated design."
The trial court asked the jury if it was referring to the jury instruction relating to felony murder. The foreman answered in the affirmative. The trial court then referred the jury to all of the instructions relevant to both premeditated and felony murder. The court further informed the jury that either theory, if found to be supported by the evidence, would justify a verdict of guilty of first-degree murder. Appellant contends that the jury should have been reinstructed on the elements of the underlying felony, burglary with the intent to commit a battery, and the definition of "reasonable doubt."
We find no error. Apparently confused by the language of the indictment, the jury asked whether first-degree murder could be supported by a finding consistent with the felony murder theory. The jury's request for clarification was a narrow one and the reinstruction was complete on the subject involved. The decision of the trial court to limit the reinstruction to the specific question posed by the jury was proper. Henry v. State, 359 So.2d 864, 866-68 (Fla. 1978); Engle v. State, 438 So.2d 803, 809-11 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984).
We turn now to appellant's claims with regard to his sentence. Appellant contends that the trial court erred in sentencing him to death after the jury recommended that a life sentence be imposed. He argues that sufficient evidence of valid mitigating circumstances was presented upon which the jury reasonably could have based its recommendation of life, and the trial judge in overriding the jury's recommendation merely substituted his view of the evidence and the weight to be given it for that of the jury. We agree.
At the penalty phase, the defense presented testimony from numerous friends and family concerning appellant's family background and character. These witnesses testified that Holsworth was quiet, nonviolent, and well-liked; that he had held a number of jobs; that he had a history of drug and alcohol problems; that he came from a broken home; and that he and his mother were physically abused by his alcoholic stepfather. An expert witness, Dr. Antonio Varsida, testified that Holsworth was "a borderline personality with paranoid and schizoid features." He further testified that the use of alcohol and drugs, particularly the substance PCP, on the night of the murder would cause an extreme emotional reaction diminishing appellant's capacity to appreciate the nature and consequences of his acts.
At the sentencing proceeding before the judge only, the defense presented additional evidence regarding Holsworth's good employment history and his capacity for rehabilitation as demonstrated by his good prison conduct before and after the offense and his completion of several educational courses while in prison.
In support of the death sentence, the judge found as aggravating circumstances that appellant previously had been convicted of a felony involving the use or threat of *354 violence, the murder was committed while the defendant was engaged in armed burglary, and the murder was especially heinous, atrocious, and cruel.[2] The trial judge found nothing in mitigation, expressly rejecting the testimony and opinion of the expert witness and giving little weight to the testimony of the other witnesses concerning appellant's drug and alcohol problem. The trial judge also found no mitigating value in the evidence offered concerning appellant's rehabilitation, employment history, or family history.
The jury, however, may have given more credence to this testimony. See Robinson v. State, 487 So.2d 1040, 1043 (Fla. 1986) (trial judge may not have believed evidence of impaired capacity but others might have). Under Florida's capital sentencing statute, it is the jury's function, in the first instance, to determine the validity and weight of the evidence presented in aggravation and mitigation. See Valle v. State, 502 So.2d 1225 (Fla. 1987); Floyd v. State, 497 So.2d 1211 (Fla. 1986). A jury's advisory opinion is entitled to great weight, reflecting as it does the conscience of the community, and should not be overruled unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). When there is some reasonable basis for the jury's recommendation of life, clearly it takes more than a difference of opinion for the judge to override that recommendation. See Gilvin v. State, 418 So.2d 996, 999 (Fla. 1982); Mills v. State, 476 So.2d 172, 180 (Fla. 1985) (McDonald, J., concurring in part, dissenting in part), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). On the record before us, we find that adequate grounds exist for reasonable persons to recommend life imprisonment.
First, we believe there was sufficient evidence for the jury to have concluded that appellant's conduct was affected by his use of drugs and alcohol. One of the defense theories in the guilt phase was that appellant's voluntary intoxication prevented him from forming the requisite specific intent for first-degree murder. Witnesses testified to appellant's drug and alcohol problem and the jury was instructed on this defense. Although the jury clearly found the appellant capable of forming at least the specific intent required to commit the underlying felony (armed burglary with intent to commit a battery), it may also have found that as a result of drugs and alcohol, his capacity to appreciate the criminality of his conduct or conform his conduct to the law was impaired. We find the evidence concerning drugs and alcohol, in conjunction with the testimony of numerous witnesses that Holsworth was generally a quiet, nonviolent person, was sufficient for the jury to reasonably have concluded that he may have been high on PCP and alcohol at the time of the murder. See Norris v. State, 429 So.2d 688 (Fla. 1983) (override improper where there was evidence that appellant had a drug problem and claimed to be intoxicated at the time of the murder).
The physical abuse appellant suffered as a child may also have been a factor in the jury's decision to recommend life imprisonment rather than death. The jury could have concluded that appellant's psychological disturbance was influenced in part by his difficult childhood. Childhood trauma has been recognized as a mitigating factor. Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Scott v. State, 411 So.2d 866 (Fla. 1982).
The jury also may have considered in mitigation appellant's employment history and positive character traits as showing potential for rehabilitation and productivity within the prison system. See Fead v. State, 512 So.2d 176 (Fla. 1987); McCampbell v. State, 421 So.2d 1072 (Fla. 1982).
After careful consideration of the entire record in this case, we conclude that the override was improper. The death penalty, *355 unique in its finality and total rejection of the possibility of rehabilitation, was intended by the legislature to be applied "to only the most aggravated and unmitigated of most serious crimes." State v. Dixon, 283 So.2d 1, 7 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Despite the depravity of the crime, we find the mitigating evidence sufficient to support a life recommendation. The facts are not so clear and convincing that no reasonable person could differ that death is the only appropriate penalty. See Tedder.
Accordingly, we affirm the judgment of guilt, but vacate the sentence of death and remand for the imposition of a life sentence.
It is so ordered.
McDONALD, C.J., and OVERTON, GRIMES and KOGAN, JJ., concur.
EHRLICH and SHAW, JJ., concur in part and dissent in part with an opinion.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur in the judgment of guilt but dissent from that portion of the judgment vacating the death sentence. In my opinion the sentencer, the trial judge, properly weighed the aggravating and mitigating factors and concluded that death was the appropriate penalty. This Court, in its opinion, has made the jury the sentencer by speculating what the jury may have considered in arriving at its life recommendation, and, in effect, has made the jury the sentencer, contrary to the clear and unequivocal language of the statute. If the legislature had opted to make the recommendation of the jury binding on the trial judge it would have so provided.
SHAW, Justice, concurring in part and dissenting in part.
I dissent from that portion of the opinion applying Tedder v. State, 322 So.2d 908 (Fla. 1975), and vacating the death sentence. I would recede from Tedder. See Combs v. State, No. 68,477 (Fla. Feb. 18, 1988) (Shaw, J., specially concurring); Grossman v. State, No. 68,096 (Fla. Feb. 18, 1988) (Shaw, J., specially concurring); and Burch v. State, 522 So.2d 810 (Fla. 1988) (Shaw, J., concurring in part, dissenting in part). The sentencing order is supported by competent substantial evidence and should not be disturbed. State v. Bolender, 503 So.2d 1247, 1249 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987); Stano v. State, 460 So.2d 890, 894 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985).
NOTES
[1] As a threshold matter, we note that appellant offers no record evidence of compliance with Florida Rule of Criminal Procedure 3.240(b)(1), which requires that motions for change of venue be in writing and accompanied by at least three affidavits setting forth facts upon which the motion is based. However, assuming arguendo that appellant's oral motion was procedurally sufficient, we review this claim on its merits.
[2] We reject appellant's contention that the trial court improperly applied the heinous, atrocious, or cruel aggravating circumstance. See Medina v. State, 466 So.2d 1046, 1050 (Fla. 1985); Duest v. State, 462 So.2d 446, 449 (Fla. 1985); Peavy v. State, 442 So.2d 200, 202 (Fla. 1983).