680 So.2d 392 (1996)
Jeffery Allen FARINA, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 80985.
Supreme Court of Florida.
April 18, 1996.
Rehearing Denied September 24, 1996.
*393 James B. Gibson, Public Defender and Larry B. Henderson, Assistant Public Defender, *394 Seventh Judicial Circuit, Daytona Beach, for Appellant, Cross-Appellee.
Robert A. Butterworth, Attorney General and Margene A. Roper, Assistant Attorney General, Daytona Beach, for Appellee, Cross-Appellant.
PER CURIAM.
Jeffery A. Farina, a prisoner under sentence of death, appeals his conviction of first-degree murder and the penalty imposed. He also appeals his convictions and six consecutive life sentences for three counts of attempted first-degree murder, armed robbery, burglary with a battery, and conspiracy to commit first-degree murder. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
We affirm all of Farina's convictions, and we affirm the sentences for the noncapital offenses. We vacate his death sentence, however, because we find that the trial court erroneously excused for cause a prospective juror who was qualified to serve.
Farina and his brother, Anthony J. Farina, were tried together and convicted of fatally shooting seventeen-year-old Michelle Van Ness during the May 1992 robbery of a Taco Bell restaurant in Daytona Beach. See also Anthony J. Farina v. State, 679 So.2d 1151 (Fla.1996). Jeffery Farina fired the shot to the head that killed Van Ness.
The jury convicted Jeffery Farina of first-degree murder and recommended death by a vote of nine to three. The trial judge followed the jury's recommendation and sentenced Farina to death.
In imposing the death penalty, the trial judge found five aggravating factors: (1) previous conviction of another capital felony or felony involving the use or threat of violence; (2) capital felony committed to avoid or prevent a lawful arrest or to effect an escape from custody; (3) capital felony committed for pecuniary gain; (4) capital felony was heinous, atrocious, or cruel; and (5) capital felony was a homicide committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(b), (e), (f), (g), (i), Fla.Stat. (1991).
The trial judge found two statutory mitigating factors: (1) no significant history of criminal activity and (2) Farina's age (sixteen) at the time of the crime. § 921.141(6)(a), (g), Fla.Stat. (1991). The judge also found nonstatutory mitigating factors, including abuse as a child and that Farina was raised with limited emotional and financial support.
The trial judge found that the aggravating factors clearly outweighed any mitigating factors.
Van Ness and the other three victims all worked at Taco Bell. After the restaurant closed early on May 9, 1992, Jeffery and Anthony Farina confronted Van Ness and Derek Mason, 16, while the two employees were emptying trash. Jeffery was armed with a .32-caliber pistol, Anthony carried a knife and rope, and both wore gloves.
The Farinas ordered Van Ness and Mason into the restaurant, where they rounded up two other employees. Jeffery held three employees at gunpoint, while Anthony forced employee Kimberly Gordon, 18, to open the safe and hand over the day's receipts. Although there were assurances that no one would be hurt, the Farinas tied the employees' hands behind their backs and Anthony forced them into a walk-in freezer.
Survivors testified that Van Ness was shaking and crying as she entered the freezer and she was afraid she would be hurt. Shortly after the employees were led to the freezer, Jeffery shot Mason in the mouth. He then shot employee Gary Robinson, 19, in the chest, and finally shot Van Ness in the head. Gordon was stabbed in the back.
The Farinas fled the restaurant, but were arrested later that day after another Taco Bell employee saw Anthony buying gasoline at a service station and called the police. When arrested, Jeffery had a receipt from a local store indicating that he had purchased.32-caliber bullets, gloves, and clothesline on May 8. The Farinas had $1,885 of the $2,158 that was taken from Taco Bell.
Van Ness died on May 10. The Farinas were charged with first-degree murder and six other offenses.
*395 Farina raises six issues on direct appeal.[1]
We turn first to the issues affecting the guilt phase. Farina argues that the trial court should not have allowed television cameras, surviving victims, and the victims' families to be positioned so close to jurors and prospective jurors (Issue 3). The defense was concerned that a television camera was about four feet away from the nearest juror's seat in the jury box, and the distance from the lens to the face of the juror sitting in that seat was approximately one foot. Farina also claims that the presence of the camera and its repeated turning to take pictures of the victims and their familiesprejudiced him.
A defendant must show prejudice of constitutional proportions to have cameras excluded from a courtroom. Jent v. State, 408 So.2d 1024, 1029 (Fla.1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). The only overt indication of prejudice came during voir dire questioning of a prospective juror:
Q [by Anthony Farina's lawyer]: As I understand it you have not been exposed [to pretrial publicity] as much as most everybody else. You were out of town for some period of time?
A [by prospective juror]: Yes.
Q: But despite that, the exposure you did have, have you had time to think about it?
A: I still don't know anything. I think I heard more yesterday from a judge saying there was someone else involved, a 13 year old, I believe, and that's all I know. I don't know a thing about this.
Q: Okay.
A: And I don't think the paper is smart enough. I do have a comment though. If it's bad for the paper to project to the people what's going on, and then you allow television in here, you're working against the principle of the court, I think. That's my opinion.
Q: Okay.
A: You're making it very difficult for the jurors to be unbiased.
This prospective juror did not serve on the jury.
Farina also notes that the trial court overruled his objection that victims and their families were seated in the first two rows in front of the jury box. He argues that this was prejudicial because the jurors and prospective jurors could see the families become emotional or embrace. Victims do, however, have a constitutional right to be present at court proceedings. Art. I, § 16, Fla. Const. Farina has not demonstrated prejudice from jurors seeing these victims or family members. The jurors undoubtedly could have seen the families' emotions or embraces even if they were seated at other locations in the courtroom. Thus, we find no merit to this issue.
Farina's fourth issue concerns both the guilt and penalty phase. Before Farina's trial, the State Attorney asked the court clerk to assign the case to another division where a particular judge was the only sitting judge. Although the request was contrary to an administrative order controlling the assignment of cases, the clerk granted the request. The defense then filed a motion to disqualify the State Attorney's office. The trial court conducted an evidentiary hearing, but denied the defense motion because no prejudice to the defendant had been shown. While we do not condone the prosecutor's actions, we do not find that the trial court abused its discretion in declining to disqualify the State Attorney's office. We have held that disqualification is proper only if specific prejudice can be demonstrated. State v. Clausell, 474 So.2d 1189, 1190 (Fla.1985). Actual prejudice is "something more than the mere appearance of impropriety." Meggs v. McClure, 538 So.2d 518, 519 (Fla. 1st DCA 1989). Disqualification of a state attorney is appropriate "only to prevent the accused *396 from suffering prejudice that he otherwise would not bear." Id. at 519-20. Based on the record before usincluding the fact that the judge the State may have hoped would try the case did not presidewe cannot say that Farina suffered any actual prejudice.
As a second part of this issue, Farina identifies three acts of prosecutorial misconduct that occurred during the penalty phase. He claims that the prosecutor made improper argument in his opening statement during the penalty phase; the State sought to re-enact the crime by using the surviving victims, other State Attorney employees, and props including a .32-caliber pistol, a dagger, and rope; and the State called Van Ness's father to the stand to testify despite an order prohibiting the use of victim impact testimony. Our resolution of Issue 2, see infra op. at 396-99, renders this part of the issue moot.
Farina's second issue, which concerns jury selection, is dispositive of the penalty phase.[2] He argues that the trial court erroneously excused for cause three jurors who were qualified to serve. We find merit to Farina's arguments about prospective juror Fannie Hudson and that alone requires us to vacate his death sentence.
In a capital case, it is reversible error to exclude for cause a juror who can follow his or her instructions and oath in regard to the death penalty.[3]See Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987); Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). The relevant inquiry is whether a juror can perform his or her duties in accordance with the court's instructions and the juror's oath. Gray, 481 U.S. at 658, 107 S.Ct. at 2051. The record shows that Hudson was qualified to serve:
Q [by the trial court]: Miss Hudson Mrs. Hudson and Mr. Nichols, in this particular case the defendants are charged with murder in the first degree. Are either of you opposed to the death penalty in an appropriate case? ...
A [by Hudson]: I have mixed feelings.
Q [by prosecutor]: All right. Miss Hudson, are your feelings such that you would never recommend the death penalty in, let's say, a murder case?
A: It would depend on the circumstances.
Q: Okay. Are you telling me that you would fairly consider the imposition of the death penalty, depending on the evidence you heard in the courtroom?
A: Yes.
Q: You would be able to do that?
A: Yes.
Q: In this particular case, as well as in every criminal case, the defendants are presently presumed innocent. Do each of you presume them innocent? And they don't have to prove anything to you? Okay.
I would like to ask you this, Miss Hudson: Is your feelings against the death *397 penalty or yourI think you said you had concerns. Are they such that, are you telling us you would be very reluctant to vote for a death penalty in any case regardless of fact?
A [by defense lawyer]: Objection to the form of the question.
THE COURT: Sustained.
Q [by prosecutor]: Can you tell me you could be fair to the state of Florida in this case, and we're going to seek the death penalty. Can you give us a fair shake on that?
A [by Hudson]: I can try.
Q: Will you try?
A: I will try.
Q: In the trial of this case, the judge decides what evidence comes into the courtroom. He doesn't weigh the evidence, it's the juror's responsibility to decide what is credible and how much weight to give it.
Do each of you understand that and will you assume that responsibility if you sit as jurors?
A: Yes....
Q: I'm asking you this: Because you're concerned about the death penalty and feel you might have difficulty dealing with that, would that prevent you from finding the defendants guilty of murder in the first degree if you were convinced they were guilty based on the evidence?
A [by Hudson]: If I'm totally, whole heartedly convinced, then I would do what I thought was right.
Q: Okay. And that might even include voting guilty of murder in the first degree.
A: If they are guilty, yes, or if the person is guilty.
Q: Okay. Notwithstanding that might mean you have to sit and listen to whether or not to recommend death, you would still give that part of the case unbiased consideration?
A: I would try to do what's right.
After Hudson's examination, State Attorney John Tanner indicated that he wanted to question Hudson further during individual voir dire. The prosecutor changed his mind, however, after the trial judge granted a defense challenge for cause:
PROSECUTOR: While we're at it then, Judge, could we go ahead and challenge Mrs. Hudson for cause?
THE COURT: Let [the defense] object so it will be on the record and it will be granted. Put your objection on the record. Tell me why you object.
JEFFERY FARINA'S LAWYER: For the reasons previously stated that the defendant is entitled to a jury of his peers, and that include people who are not only in favor of the death penalty, but opposed to the death penalty.
THE COURT: I thought it would be interesting to see how it works both ways. So if I grant you [a challenge for cause for another juror], I'm going to grant [the State's challenge].
Mr. Mott [Anthony Farina's lawyer], you join in and the ruling will be the same. If I grant yours, I'll grant [the State's].
ANTHONY FARINA'S LAWYER: I join in, and on the specific grounds that pursuant to the 6th, 8th, 14th amendments to the United States Constitution, article one, section two, nine, 16, 17, and 22.
The Davis Court established a per se rule that requires the vacation of a death sentence when a juror who is qualified to serve is nonetheless excused for cause. See generally Davis; see also Gray, 481 U.S. at 659, 107 S.Ct. at 2052; Davis, 429 U.S. at 123, 97 S.Ct. at 400 (Rehnquist, J., dissenting). The Davis Court relied on an earlier case in which the Court held that "`a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.'" Id. at 122, 97 S.Ct. at 399 (quoting Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968)).[4]
*398 In this instance, we are bound by the decisions of the United States Supreme Court. In Chandler v. State, 442 So.2d 171, 173-75 (Fla.1983), this Court relied on Davis to vacate death sentences when two jurors were dismissed for cause over the defendant's objection. We found that "at least two of the venire members for whom the State was granted cause challenges never came close to expressing the unyielding conviction and rigidity regarding the death penalty which would allow their excusal for cause under the Witherspoon standard." Id. at 173-74.
A review of Hudson's voir dire questioning reveals that while Hudson may have equivocated about her support for the death penalty, her views on the death penalty did not prevent or substantially impair her from performing her duties as a juror in accordance with her instructions and oath. She was qualified to serve under the Witherspoon-Witt[5] standard. Thus, we find that the trial court erred in granting the State's challenge for cause, and Farina's death sentence cannot stand.
We recognize that the trial judge has the duty to decide whether a challenge for cause is improper, and this Court must give deference to the judge's determination of a prospective juror's qualifications. See Johnson v. State, 608 So.2d 4, 8 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993). We find, however, that the trial judge abused his discretion when he excused Hudson for cause.[6] Three factors support our conclusion. First, as mentioned, it appears from the record that Hudson's views on the death penalty did not prevent or substantially impair her from performing her duties as a juror in accordance with her instructions and oath. Second, the State gave no reason for seeking its challenge and thus shed no light on why it thought Hudson was not qualified to serve.[7] And finally the trial court, in granting the State's challenge, indicated that it was doing so because it had just granted a defense challenge.
The erroneous exclusion of Hudson is not subject to harmless error analysis. The United States Supreme Court determined in Gray that harmless error does not apply because the Witherspoon-Witt standard is rooted in the constitutional right to an impartial jury, which goes to the integrity of the legal system. Gray, 481 U.S. at 668, 107 S.Ct. at 2056. The right to an impartial jury is so basic to a fair trial that its infraction cannot be considered harmless. Id. We emphasize that Gray is controlling. See Chandler, 442 So.2d at 174 (dismissal of jurors such as Hudson is not subject to harmless error analysiseven if the State could have peremptorily challenged the same juror).
Thus, because the trial court erroneously excused Hudson for cause, we vacate Farina's *399 death sentence and remand for a new sentencing proceeding.
Because we are remanding for a new sentencing proceeding, we do not address Farina's first issue of whether it is unconstitutional to execute someone who was sixteen years old at the time of the crime. We do not discuss the other issues Farina raises.[8]
In addition to Farina's issues, the State raises three issues on cross-appeal.[9] We discuss only the ruling preventing the introduction of victim impact evidence at the penalty phase. The State argues that, despite an existing order prohibiting the introduction of victim impact evidence, the trial court should not have barred Van Ness's father from testifying. The State says that the purpose for calling the victim's father was to provide a brief background without getting into the loss to the victim's family.
We do not condone the State's blatant attempt to put on such testimony when the trial court had clearly ruled that the testimony would not be permitted. But, on remand, the State should be allowed to present victim impact testimony that comports with the dictates of decisions from the United States and Florida supreme courts. The United States Supreme Court has held that
if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated. Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). In Payne the Court receded from holdings in Booth v. Maryland,[10] and South Carolina v. Gathers,[11] that victim impact evidence was inadmissible in capital sentencing proceedings. Payne, 501 U.S. at 830 n. 2, 111 S.Ct. at 2611 n. 2. The only part of Booth that Payne did not overrule was "that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment." Id.

Thus, on remand, the State may present victim impact evidence that comports with Payne. See Windom v. State, 656 So.2d 432 (Fla.1995); Burns v. State, 609 So.2d 600, 605 (Fla.1992).
Accordingly, we affirm Farina's convictions and noncapital sentences. We vacate his sentence of death and remand for a new sentencing proceeding. This proceeding shall include an advisory verdict to be rendered by a jury chosen in compliance with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Whether (1) it is unconstitutional to execute a sixteen-year-old; (2) serious errors undermined the fairness and impartiality of the jury; (3) the trial court improperly overruled defense objections to the placement of the television camera, victims, and victims' families close to the jurors and prospective jurors; (4) intentional prosecutorial misconduct denied Farina a fair trial; (5) the trial court should have given Farina's specially-requested jury instructions; and (6) Florida's death penalty statutes are unconstitutional.
[2] This issue includes several subparts concerning jury selection as it affects the penalty phase. Given our resolution of the subpart concerning Fannie Hudson, we need not reach all of these subparts. Other subparts of the second issue affect the guilt phase of the trial. We do not believe the trial court erred in refusing to grant a change of venue, despite the publicity surrounding the crime (including reports of the defendants' confessions). The mere fact that jurors were exposed to pretrial publicity is not enough to raise the presumption of unfairness. Bundy v. State, 471 So.2d 9, 19 (Fla.1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986). "It is sufficient if the juror can lay aside his [or her] opinion or impression and render a verdict based on the evidence presented in court." Id. at 20. Even publicity about a confession is not a per se ground for granting a change of venue. Holsworth v. State, 522 So.2d 348, 351 (Fla.1988). We also find no error in the trial court's refusal to conduct an individual voir dire of what prospective jurors knew about the case. The trial court has the discretion to order individual voir dire. See, e.g., Davis v. State, 461 So.2d 67, 69 (Fla.1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). See also Cummings v. Dugger, 862 F.2d 1504, 1508-09 (11th Cir.) (individual examination, while preferred when there is extensive publicity, is not required), cert. denied, 490 U.S. 1111, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989). We cannot say that the trial court's failure to conduct individual voir dire resulted in a trial that was fundamentally unfair.
[3] Only the death sentenceand not the convictionmust be vacated when a juror is erroneously excluded under these circumstances. Chandler v. State, 442 So.2d 171, 175 (Fla.1983).
[4] The United States Supreme Court subsequently clarified Witherspoon and set out the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment:

That standard is whether the juror's views would "prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath." We note that, in addition to dispensing with Witherspoon's reference to "automatic" decisionmaking, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity." This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism.... Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [T]his is why deference must be paid to the trial judge who sees and hears the juror.
Wainwright v. Witt, 469 U.S. 412, 424-26, 105 S.Ct. 844, 852-53, 83 L.Ed.2d 841 (1985) (footnote omitted).
[5] Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). See supra note 4.
[6] On reviewing the record, we find that the trial judge did not abuse his discretion in granting the State's challenges for cause for prospective jurors Barney Gulin and Robert Heffelfinger.
[7] In Gray v. Mississippi the United States Supreme Court noted that "[a] motion to excuse a venire member for cause of course must be supported by specified causes or reasons that demonstrate that, as a matter of law, the venire member is not qualified to serve." 481 U.S. 648, 652 n. 3, 107 S.Ct. 2045, 2048 n. 3, 95 L.Ed.2d 622 (1987).
[8] Our resolution of other issues renders moot Issues 5 and 6.
[9] Whether the trial court erred in (1) prohibiting the State from introducing victim impact evidence in the penalty phase; (2) precluding the State from conducting a single trial of Farina and his codefendants utilizing redacted confessions and statements; and (3) granting a judgment notwithstanding the verdict as to the kidnapping offenses.
[10] 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overruled by Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
[11] 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), overruled by Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).