679 So.2d 1151 (1996)
Anthony Joseph FARINA, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 81118.
Supreme Court of Florida.
April 18, 1996.
Rehearing Denied September 24, 1996.
*1152 Thomas R. Mott, Daytona Beach, for Appellant, Cross-Appellee.
Robert A. Butterworth, Attorney General and Margene A. Roper, Assistant Attorney General, Daytona Beach, for Appellee, Cross-Appellant.
PER CURIAM.
Anthony J. Farina, a prisoner under sentence of death, appeals his conviction of first-degree murder and the penalty imposed. He also appeals his convictions and six consecutive life sentences for three counts of attempted first-degree murder, armed robbery, burglary, and conspiracy to commit murder. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
We reach the same result as we did in the case involving Farina's brother and codefendant. See Jeffery A. Farina v. State, 680 So.2d 392 (Fla.1996). We affirm all of Anthony *1153 Farina's convictions, and we affirm the sentences for the noncapital offenses. We vacate the death sentence, however, because we find that the trial court erroneously excused for cause a prospective juror who was qualified to serve.
Farina was convicted in the fatal shooting of Michelle Van Ness, a seventeen-year-old employee of a Taco Bell restaurant in Daytona Beach. Jeffery Farina fired the fatal shot during a robbery at the restaurant on May 9, 1992. Three other employees were wounded. For a more complete recitation of the facts, see Jeffery A. Farina, 680 So.2d 392.
After finding Anthony Farina guilty of first-degree murder, the jury recommended death by a vote of seven to five. The trial judge followed that recommendation and sentenced Farina to death.
In imposing the death penalty, the trial judge found five aggravating factors: (1) previous conviction of another capital felony or a felony involving the use or threat of violence; (2) capital felony committed to avoid or prevent a lawful arrest or to effect an escape from custody; (3) capital felony committed for pecuniary gain; (4) capital felony was heinous, atrocious, or cruel; and (5) capital felony was a homicide committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(b), (e), (f), (h), (i), Fla.Stat. (1991).
The trial judge found no statutory mitigation, but found nonstatutory mitigation including abuse as a child and that Farina was raised with limited emotional and financial support.
The judge determined that the aggravating factors clearly outweighed any mitigation.
Farina raises ten issues on this direct appeal.[1]
We first consider the issues affecting the guilt phase of the trial.[2] Farina argues in Issue 1 that he was denied a fair trial because he was tried by biased and partial jurors. The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the law as instructed by the court. Lusk v. State, 446 So.2d 1038, 1041 (Fla.) (citing Singer v. State, 109 So.2d 7 (Fla.1959)), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).
Our review of the record indicates that the five jurors about whom Farina complains met the Lusk test for juror competency. Although some of the jurors gave conflicting answers during voir dire, all ultimately indicated that they could base their decision on the evidence. Thus, we find no abuse of the trial judge's discretion either in refusing to excuse these jurors for cause or in refusing to grant additional peremptories to exercise on these jurors. See Lambrix v. State, 494 So.2d 1143, 1146 (Fla.1986) (standard on review is abuse of discretion because trial court can observe and evaluate prospective juror's demeanor and credibility).
*1154 In Issue 2, Farina argues that he was forced to use peremptory challenges on a number of prospective jurors who should have been excused for cause. As a result, he argues, objectionable jurors were seated. This Court has held that "`[t]o show reversible error, a defendant must show that all peremptories had been exhausted and that an objectionable juror had to be accepted.'" Trotter v. State, 576 So.2d 691, 693 (Fla.1990) (quoting Pentecost v. State, 545 So.2d 861, 863 n. 1 (Fla.1989)). Farina used sixteen peremptory challenges, including seven that he claims were used on prospective jurors who should have been excused for cause. Under Trotter, a defendant seeking reversal because he claims he was wrongfully forced to exhaust peremptory challenges must identify a specific juror he otherwise would have struck peremptorily. 576 So.2d at 693. Although Farina sought additional peremptories to excuse certain jurors, we have already found that the jurors Farina complains of in Issue 1 were acceptable. Thus, there were no objectionable jurors on his panel, so it does not matter that he was forced to exercise peremptory challenges as he argues in Issue 2.
Farina argues in Issue 4 that the trial court improperly restricted his voir dire, which he said was especially significant because the vote for death was seven to five. Whether a trial judge should have allowed interrogation on specific subjects is reviewed under an abuse of discretion standard. For example, hypothetical questions about a particular legal document are appropriate if they are essential to determine whether challenges for cause or peremptory challenges should be made. Lavado v. State, 469 So.2d 917, 919-20 (Fla. 3d DCA 1985) (Pearson, J., dissenting), dissent adopted by Lavado v. State, 492 So.2d 1322 (Fla.1986).
Defense counsel tried on many occasions to solicit prospective jurors' personal opinions. The defense was allowed to ask questions such as, "If the judge instructs you that age is a factor you should consider in reaching the determination of the applicability of the death penalty would you agree with that?" The court did sustain the State's objections to questions about personal opinions such as, "Now, aside from following the instructions of the court, is that something that you think is good or bad, in your personal opinion?"
While it is true that defense counsel was restricted from exploring jurors' attitudes on every potential mitigator, the record shows that the defense, the State, and the trial court either asked or instructed prospective jurors on numerous occasions whether they could be fair to Farina and his brother. Thus, we find no merit to this issue.
We also find no merit to Issue 5, in which Farina argues that the trial court erred in denying his motion for change of venue. The crimes at issue occurred in May 1992, and the trial began in November 1992. During that time there were numerous media accounts of the crime, including reports of the defendants' confessions.
The fact that jurors were exposed to pretrial publicity, however, is not enough to raise the presumption of unfairness. Bundy v. State, 471 So.2d 9, 19 (Fla.1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986). "It is sufficient if the juror can lay aside his opinion or impression and render a verdict based on the evidence presented in court." Id. at 20. Even publicity about a confession is not a per se ground for granting a change of venue. Holsworth v. State, 522 So.2d 348, 351 (Fla.1988). Although most people questioned during voir dire had heard about the case, all of those ultimately chosen indicated they could base their verdicts on the evidence presented.
Farina argues in Issue 6 that he was denied a fair trial because he was tried with a codefendant and that codefendant's incriminating statements were offered at trial when Farina could not cross-examine the codefendant. Police monitored conversations between Jeffery and Anthony Farina on two occasions while the Farinas were in custody and sitting in a police car. In these conversations, the Farinas discussed the crimes. We have held that a person in custody in the back of a police car has no right of privacy. State v. Smith, 641 So.2d 849, 851 (Fla.1994).
*1155 Anthony Farina argues that the admission of Jeffery's statements violated his Sixth Amendment right to confront witnesses as explained in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We find no Confrontation Clause violation under the circumstances of this case.
In Bruton, the United States Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated when a codefendant's confession is admitted at their joint trial, despite the fact that the jury is instructed that the confession is admissible only against the codefendant. Id. at 126, 88 S.Ct. at 1622-23. One year later, the Supreme Court ruled that a Bruton violation did not automatically require reversal of an otherwise valid conviction and was subject to harmless error analysis. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728-29, 23 L.Ed.2d 284 (1969).
In Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), abrogated by Cruz v. New York, 481 U.S. 186, 191-92, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the Supreme Court considered the question of whether Bruton applies where the defendant's own confession, which corroborates that of the codefendant, has also been introduced at trial. A plurality of four justices found the Bruton prohibition inapplicable to cases involving interlocking confessions. Id. at 69-76, 99 S.Ct. at 2137-41. The remaining four justices expressed the view that the defendant's own interlocking confession might render the Confrontation Clause violation harmless but did not cause the introduction of the nontestifying codefendant's confession not to constitute a violation. Id. at 77-91, 99 S.Ct. at 2141-48.
The Supreme Court revisited the same issue in Cruz v. New York, 481 U.S. 186, 191-92, 107 S.Ct. 1714, 1718-19, 95 L.Ed.2d 162 (1987), and rejected the Parker plurality position that the holding in Bruton is inapplicable to cases involving interlocking confessions. The Supreme Court held that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." Id. at 193, 107 S.Ct. at 1719 (citation omitted). The Court explained that "in the real world of criminal litigation [where] the defendant is seeking to avoid his confession," a codefendant's confession that recites essentially the same facts as those of the defendant's confession "significantly harms" the defendant's case. Id. at 192, 107 S.Ct. at 1718-19. Thus, the Court concluded that the introduction of the defendant's own interlocking confession would not negate any Confrontation Clause violation. Id. at 191, 107 S.Ct. at 1718 (explaining the approach espoused by Justice Blackmun in Parker, which the Court adopted in Cruz).
However, the defendant's confession may be considered at trial in assessing whether the codefendant's statements are supported by sufficient indicia of reliability to be directly admissible against the defendant despite the lack of opportunity for cross-examination of the codefendant Id. at 193-94, 107 S.Ct. at 1719-20; Lee v. Illinois, 476 U.S. 530, 543-44, 106 S.Ct. 2056, 2063-64, 90 L.Ed.2d 514 (1986). The defendant's own confession would also be considered on appeal to determine whether a Confrontation Clause violation was harmless. Cruz, 481 U.S. at 194, 107 S.Ct. at 1719-20; Harrington, 395 U.S. at 252-54, 89 S.Ct. at 1727-29.
As the Supreme Court explained in Lee, a codefendant's statements about what the defendant said or did are hearsay, which is subject to all the dangers of inaccuracy which characterize hearsay generally. 476 U.S. at 541, 106 S.Ct. at 2062. Moreover, these statements are "`less credible than ordinary hearsay evidence'" due to the codefendant's "`strong motivation to implicate the defendant and to exonerate himself.'" Id. (quoting with approval Justice White's dissent in Bruton, 391 U.S. at 141, 88 S.Ct. at 1631). Accordingly, "the Court has spoken with one voice in declaring presumptively unreliable accomplice's confessions that incriminate defendants." Lee, 476 U.S. at 541, 106 S.Ct. at 2062 (emphasis added). This presumption recognizes that such confessions may be "the product of the codefendant's desire to shift or spread blame, curry favor, *1156 avenge himself, or divert attention to another." Id. at 545, 106 S.Ct. at 2064.
In the instant case, the State contends that Jeffery's taped conversations were properly admitted under the "statement against interest" exception to the hearsay rule. See § 90.804(2)(c), Fla.Stat. (1991).[3] Section 90.804(2)(c) provides that a statement that would subject the declarant to criminal liability is admissible provided that the declarant is unavailable as a witness. While a codefendant's statement or confession constitutes a statement against the codefendant's interest, it raises Confrontation Clause problems when that "statement against interest" also incriminates another criminal defendant and is admitted during their joint trial. See Bruton, 391 U.S. at 126, 88 S.Ct. at 1622-23. The Supreme Court explained in Lee that such statements are "presumptively suspect and must be subjected to the scrutiny of cross-examination." Lee, 476 U.S. at 541, 106 S.Ct. at 2062. In fact, the Supreme Court specifically rejected the state's attempt to categorize the hearsay at issue in Lee as a "simple `declaration against penal interest'" because "[t]hat concept defines too large a class for meaningful Confrontation Clause analysis." Id. at 544 n. 5, 106 S.Ct. at 2064 n. 5. The Court, instead, decided the case "as involving a confession by an accomplice which incriminates a criminal defendant." Id.
Thus, even if such statements are properly admitted under the statement against interest hearsay exception, they are likely to run afoul of the Confrontation Clause. However, this does not mean that such statements are never admissible. The Supreme Court also explained in Lee that the presumption of unreliability that attaches to a codefendant's confession may be rebutted where there is a "`showing of particularized guarantees of trustworthiness.'" 476 U.S. at 543, 106 S.Ct. at 2063 (quoting Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)).
In Lee, the State of Illinois argued that the circumstances surrounding a codefendant's confession and the interlocking nature of the codefendants' confessions rebutted the presumption of unreliability. 476 U.S. at 544-46, 106 S.Ct. at 2063-65. While recognizing that the presumption could be rebutted if the codefendant's statement had sufficient "indicia of reliability," the Supreme Court went on to find that neither of the grounds asserted by the state met that standard. Id. at 546, 106 S.Ct. at 2064-65. First, the circumstances surrounding the confession[4] reflected the reality of the criminal process, namely that partners lose any identity of interest and quickly become antagonists after the "jig is up." Id. at 544-45, 106 S.Ct. at 2063-64. Second, while the codefendants' statements did interlock on some of the facts, they diverged on the very issues in dispute: the roles played by the two defendants in one killing and the question of premeditation as to the other killing. Id. at 546, 106 S.Ct. at 2064-65. Thus, the Supreme Court concluded that the admission of the codefendant's confession inculpating the accused violated the constitutional right of confrontation. Id. However, the Supreme Court did not foreclose the possibility that the error was harmless when assessed in the context of the entire case against the accused. Id. at 547, 106 S.Ct. at 2065.
*1157 Based upon the cases discussed above, we find that the circumstances surrounding Jeffery's taped conversations had sufficient "indicia of reliability" to rebut the presumption of unreliability that normally attaches to such hearsay evidence. Thus, the conversations were properly admitted. First, neither brother had an incentive to shift blame during these conversations as these were not statements or confessions to the police. These were discussions between two brothers sitting in the back seat of a police car; neither was aware that the conversations were being recorded. Second, Anthony was present and confronting Jeffery face-to-face throughout the conversations. Anthony could have taken issue with Jeffery's statements at any point, but instead either tacitly agreed with Jeffery's statements or actively discussed details of the crime. Thus, the court did not err in admitting the taped conversations between Jeffery and Anthony Farina, and no Bruton violation occurred in this case.
However, even if we determined that the conversations should not have been admitted because they did not meet the Confrontation Clause reliability standards, we would find the error harmless. As the Supreme Court explained in Cruz, the defendant's own confession may be considered on appeal in assessing whether any Confrontation Clause violation was harmless. 481 U.S. at 193-94, 107 S.Ct. at 1719-20.
In this case, Anthony Farina's own incriminating statements were admissible as admissions by a party-opponent. See § 90.803(18)(a), Fla.Stat. (1991). In these statements, Anthony recounted the crime in minute detail, including which victim died and the specific wounds inflicted upon specific victims. While most of Anthony's comments focused on Jeffery's actions, Anthony did admit that he tied up the victims. He also expressed regret that "[i]nstead of stabbing [the victims] in the back [I] should have sliced their fucking throats and then put something in front of the freezer door so they couldn't open them ... [and] cut the phone lines." In light of Anthony's inculpatory statements, even if the court had erred in admitting Jeffery Farina's incriminating statements, it would be harmless. Cruz.
As for Farina's tenth issue, which concerns prosecutorial misconduct, we find as in Jeffery A. Farina, 680 So.2d at 395-96no error in the trial court's refusal to disqualify the State Attorney's office. We do not condone the prosecutor's action of improperly asking the court clerk to assign the case to a particular division, but we do not believe that Farina suffered any actual prejudice that would require disqualification. See State v. Clausell, 474 So.2d 1189, 1190 (Fla. 1985) (disqualification proper only when specific prejudice demonstrated); Meggs v. McClure, 538 So.2d 518, 519 (Fla. 1st DCA 1989) (actual prejudice is "something more than the mere appearance of impropriety").
Turning to the penalty phase, Farina's third issue concerns jury selection. He argues that the trial court erroneously excused for cause three jurors who were qualified to serve. We find merit to Farina's arguments about prospective juror Fannie Hudson and vacate his death sentence.[5]
In Jeffery A. Farina, we concluded that, under controlling authority of the United States Supreme Court, it is reversible error to exclude for cause a juror whose views do not prevent or substantially impair him or her from performing the duties as a juror in accordance with the instructions and oath.[6] 680 So.2d at 396. Hudson could follow her instructions and oath and was qualified to serve under the Witherspoon-Witt[7] standard. Id. at 398.
Based on our resolution of this jury-selection issue, we do not discuss the other penalty-phase issues that Farina raises.[8]
*1158 The State raises three issues on cross-appeal.[9] We address only the issue involving the introduction of victim impact evidence at the penalty phase. Before the penalty phase began, the trial court ruled that victim impact evidence would not be permitted during that phase of the trial. The State nonetheless sought to introduce testimony from Van Ness's father. The State maintains that the purpose for calling the father was to provide a brief background without getting into the loss to the victim's family.
As we said in Jeffery A. Farina, 680 So.2d at 399, we do not condone the State's attempt to put on this testimony when the trial court had clearly ruled that the testimony would not be admissible. On remand, however, the State may present victim impact testimony that comports with the decision in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). See also Windom v. State, 656 So.2d 432 (Fla.1995); Burns v. State, 609 So.2d 600, 605 (Fla.1992).
Accordingly, we affirm all of Farina's convictions, and we affirm his sentences for the noncapital offenses. We vacate his sentence of death and remand for a new sentencing proceeding.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Whether (1) Farina was denied a fair trial because he was tried by biased and partial jurors; (2) Farina was forced to use peremptory challenges to exclude jurors who should have been excused for cause, and objectionable jurors were seated after Farina used his remaining peremptory challenges and the trial court refused to grant additional peremptory challenges; (3) the trial court erred in excusing jurors who could be fair and impartial; (4) the trial court erred in restricting voir dire and preventing Farina from unveiling grounds for cause challenges and from developing information to assist him in intelligently exercising peremptory challenges; (5) the trial court erred in denying Farina's motions for change of venue; (6) Farina was denied a fair trial when he was tried with a codefendant, where the codefendant's incriminating statements were offered at trial, and where Farina could not cross-examine the codefendant; (7) the trial court erred in refusing to give Farina's specially-requested jury instructions; (8) Farina's death sentence was disproportional, the evidence did not support aggravating circumstances, the trial court failed to find mitigating circumstances supported by the evidence, and the trial court erred in entering its written findings because it did not weigh or consider clearly established mitigating factors; (9) prosecutorial misconduct deprived Farina of a fair sentencing hearing; and (10) the prosecutor's attempt to hand-pick a judge deprived Farina of a fair trial.
[2] Issues 1, 2, 4, 5, 6, and 10.
[3] Section 90.804(2)(c), Florida Statutes (1991), creates an exception to the hearsay rule for statements against interest, provided that the declarant is unavailable as a witness. The statute excepts from the hearsay exclusion statements meeting the following criteria:

A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject him to liability or to render invalid a claim by him against another, so that a person in the declarant's position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
[4] These circumstances included that the codefendant initially refused to talk to the police; that his confession was elicited only after he was told that the other defendant had already implicated him and after she implored him to share the responsibility with her; and that he had motive to distort the facts to her detriment and was actively considering becoming a witness for the State against her. Lee v. Illinois, 476 U.S. 530, 544, 106 S.Ct. 2056, 2063-64, 90 L.Ed.2d 514 (1986).
[5] We reject Farina's arguments that the trial court erroneously excused for cause prospective jurors Barney Gulin and Robert Heffelfinger.
[6] Only the death sentenceand not the convictionmust be vacated when a juror is erroneously excluded under these circumstances. Chandler v. State, 442 So.2d 171, 175 (Fla.1983).
[7] Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968); Wainwright v. Witt, 469 U.S. 412, 424-26, 105 S.Ct. 844, 852-53, 83 L.Ed.2d 841 (1985).
[8] Issues 7, 8, and 9.
[9] Whether the trial court erred in (1) prohibiting the State from introducing victim impact evidence in the penalty phase; (2) precluding the State from conducting a single trial of Farina and two codefendants and in limiting testimony as to the admissions made by each of the codefendants by the police officer who took those statements; and (3) granting a judgment notwithstanding the verdict as to the offenses of kidnapping.