744 So.2d 1103 (1999)
Bruce WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-1789.
District Court of Appeal of Florida, Third District.
October 6, 1999.
*1104 Bennett H. Brummer, Public Defender and Howard K. Blumberg, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and M. Rebecca Springer (Fort Lauderdale), Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and COPE and SHEVIN, JJ.
SCHWARTZ, Chief Judge.
It is fair to say that the appellant was found guilty of the attempted robbery of Janetta Bowens entirely on the basis of the victim's trial testimony. She stated that, on September 8, 1997, she was attacked on the street by a man who attempted to rip a gold chain from her neck. After hand-to-hand combat, during which *1105 Ms. Bowens got a good look at the perpetrator, he ran necklaceless from the scene. Immediately thereafter, the police conducted a show up with a possible suspect, but Ms. Bowens said he was not the man. Some twenty days later, however, on September 29, 1997, she was driving with her husband when she saw Williams standing at a bus stop and immediately recognized him as the offender. As soon as they saw each other, Williams, who obviously wanted no part of Ms. Bowens, took off running again. He was soon apprehended and positively identified. Besides the victim, the only witness for the state was the lead detective who had no direct knowledge of the circumstances. The defendant put on no evidence, thereby retaining the right to opening and closing argument in which counsel vigorously, but unsuccessfully, contended that Ms. Bowens had gotten the wrong man.
Williams raises two substantial points on this appeal from his conviction. Both of them merit discussion, but neither justifies reversal.

I.
The defendant first claims that the trial judge reversibly limited his counsel's questioning of each prospective juror on the subject of a possible eyewitness misidentification the sole basis of the defense position in the case. See Lavado v. State, 492 So.2d 1322 (Fla.1986); Fla. R.Crim.P. 3.300(b). We disagree.
On this point, the record shows that, after the trial court had initially restricted counsel's questioning on the issue,[1] the subject arose again prior to the swearing of the jury:[2]
MR. PEREZ: [defense counsel] ... [I] asked a question has anyone made a mistake or people make mistakes in misidentifying people.
THE COURT: Do you want to ask them that question.
MR. PEREZ: All of them.
THE COURT: You want to ask them all that question. We can do that right now. If you want to I'll be happy to do that. You want me to bring them in.
MR. PEREZ: Yes, judge.
THE COURT: We can bring them in and ask them that question.
MR. PEREZ: Am I allowed to ask follow up questions to that follow up question?
THE COURT: It depends.
(Thereupon, the jury entered the courtroom.)
THE COURT: Welcome back ladies and gentlemen. Ladies and gentlemen I just got a couple of questions for you all. Let the record reflect that all the prospective jurors are present. All right, ladies and gentlemen does anybody believe that humans cannot misidentify people; that they cannot mistake someone for someone else? Does anybody believe that people can't do that? Does anybody feel that when you see that *1106 person that is the correct person. Does anybody feel that way. If you feel that way, let us discuss it. Let the record reflect that no hands have been raised.

Does anybody feel that it will be impossible for people to make a misidentification? Does anybody feel that way that they can't; that they can make a mistake in identifying somebody? If somebody feels that way please raise your hands and we can discuss it. Mr. Perez, please proceed, sir.
MR. PEREZ: Mr. Matos [prospective juror] the judge just asked two questions and that is whether it was impossible or where in terms ofare you aware of circumstances about certainwhere those events have occurred.

THE COURT: No, sir, you cannot pretry the case.
MR. PEREZ: I have no further questions at this time.
THE COURT: Okay, thank you. Any further challenges.
MR. LIEBER: Not from the State.
THE COURT: Any further challenges, Mr. Perez.
MR. PEREZ: None.
* * *
(Thereupon, the jury was duly sworn.)[emphasis supplied][3]
Thus, the subject was fully covered by the trial court's inquiries made without defense objection and the only question actually disallowed below concerned whether a juror had been involved in or knew of a particular incident of misidentification. That ruling is therefore the only one before us on this issue. For several reasons, we conclude that it does not warrant a new trial.
1. First, the appellant has not demonstrated that it constituted an abuse of the broad discretion vested in the trial court in regulating the extent and scope of the examination of prospective jurors. Farina v. State, 679 So.2d 1151 (Fla.1996); Vining v. State, 637 So.2d 921 (Fla.1994), cert. denied, 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994); 33 Fla Jur.2d Juries § 129 (1994).
2. Second, no matter which side is deemed to have the burden of demonstrating it on appeal, see Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998), review granted, 728 So.2d 202 (Fla.1998), 729 So.2d 391 (Fla.1999), the elimination of this single question surely does not rise to the level of harmfulness. Compare Lavado, 492 So.2d at 1322 (requiring reversal because of disallowance of specific inquiry as to whether prospective jurors could fairly and impartially consider defense of voluntary intoxication because issue was not covered by court's general inquiries as to whether jury would follow the law); Walker v. State, 724 So.2d 1232 (Fla. 4th DCA 1999)(same as to issue of defense of entrapment); and Chandler v. State, 744 So.2d 1058 (Fla. 4th DCA 1999), all of which involved preclusion of entire areas of voir dire questioning.
3. Finally, but primarily, we believe the ruling was not erroneous at all. It is clear, in the light of the extensive questioning by the trial judge to the entire panel on the subject, that the contested ruling did not prejudicially affect counsel's ability to effectively exercise his peremptory challenges, which is the only interest essentially at stake in the conduct of the voir dire. See Lavado v. State, 492 So.2d at 1322.
This is because the juror's involvement, or lack of it, has nothing to do with the crucial issue of whether she could accept the defense that Williams had been wrongfully identified in this case. The distinction appears in the appellant's lead *1107 case of Lavado, 492 So.2d at 1323, in which the court held:
The issue presented in this case is whether the trial court erred in refusing defense counsel's request to ask prospective jurors about their willingness and ability to accept the defense of voluntary intoxication. We believe the trial court's restriction of defense counsel's questioning on voir dire denied Lavado his right to a fair and impartial jury.
As Judge Pearson pointed out in his dissent, "[i]f he knew nothing else about the prospective jurors, the single thing that defense counsel needed to know was whether the prospective jurors could fairly and impartially consider the defense of voluntary intoxication." Lavado v. State, 469 So.2d 917, 919 (Fla. 3d DCA 1985). [emphasis supplied]
See Walker v. State, 724 So.2d at 1232; Chandler v. State, 744 So.2d at 1061. Unlike also, for example, a juror's experience as the victim or having been accused of a crime, cf. Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996), her ability to pass on this so-called defense, practically and logically would remain the same regardless of whether she had ever herself been misidentified (and therefore regardless of what her answer to counsel's question on the subject). In this light, the disallowed question must be considered merely as a means to emphasize and reiterate Williams's defensive position that eyewitness misidentifications occur in the real world and thus to misuse the voir dire for a purpose which is properly served only by final argument. See Stano v. State, 473 So.2d 1282 (Fla.1985); Leamon v. Punales, 582 So.2d 8 (Fla. 3d DCA 1991). While this practice is familiar, indeed common, and attempts to employ it are thoroughly understandable, it is nonetheless unacceptable. The trial judge was right to preclude its use below.[4]

II.
Similarly, there is no basis for reversal in the overruling of an objection to the prosecution's statement to the jury on final argument that it should "not let the defense sell you a used car." Unlike Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982), in which the state attorney asked whether the jury would buy a used car from the defense lawyer, we view the present comment, not as a forbidden and usually fatal attack on the character of counsel personally, but as a permissible comment on the quality of the defendant's case itself. See Lewis v. State, 377 So.2d 640 (Fla.1979); White v. State, 348 So.2d 368 (Fla. 3d DCA 1977), approved in part, quashed in part, 377 So.2d 1149 (Fla.1979).
Moreover, even if, contrary to this determination, the comment was indeed wrong, it was, standing alone, and in the context of the entire case, not enough to vitiate the entire trial and require a new one. State v. Murray, 443 So.2d 955 (Fla. 1984); Hall v. State, 444 So.2d 1019 (Fla. 3d DCA 1984). While harmful prosecutorial excesses undoubtedly require reversal, Ruiz v. State, 743 So.2d 1 (Fla.1999), and cases cited; Gomez v. State, ___ So.2d ___, 1999 WL 1143736 (Fla. 3d DCA Case no. 98-2180, opinion filed, December 15, 1999), and cases cited, it is also true, as was said in Henry v. State, 290 So.2d 73, 75 (Fla. 2d DCA 1974), that:
otherwise proper trials are not to be reversed merely because an ... analysis of a single statement reveals a defect in *1108 rhetoric. When, as in this case, it clearly appears that the defendant's substantial rights were not affected, it is our duty to affirm. We do.
Affirmed.
SHEVIN, J., concurs.
COPE, J. (concurring in part and dissenting in part).
While I concur on point II, I respectfully dissent with respect to point I, the voir dire issue.

I.
Florida Rule of Criminal Procedure 3.300(b) provides that after the court examines the prospective jurors, "Counsel for both the State and defendant shall have the right to examine jurors orally on their voir dire." (Emphasis added). This court has said:
We are in full accord with the holding of Florida courts that in the trial of every cause before a jury in this state, the law grants to the respective parties the right, either personally or through their attorneys, to orally examine jurors on voir dire. Trial attorneys should be accorded ample opportunity to elicit pertinent information from prospective jurors on voir dire examination. It is from information so obtained that trial attorneys can call upon their own skill to determine whether to challenge for cause or exercise a peremptory challenge. The primary purpose of voir dire is to determine whether the juror is qualified and will be fair and impartial, free from all bias, prejudice or interest in the cause being tried.
Ritter v. Jimenez, 343 So.2d 659, 661 (Fla. 3d DCA 1977) (citations omitted).
Once the trial court put questions to the potential jurors collectively about misidentification, it was the right of defense counsel to follow up with his own questions to the individual prospective jurors.
The court prohibited defense counsel from inquiring about the individual jurors' experiences with misidentification. It did so on the theory that this was "pretrying" the case. As the majority opinion correctly recognizes, the questions defense counsel attempted to propound did not amount to "pretrying" the case. Majority opinion at 8 n. 4. Since the trial court's stated reason for curtailing questioning was incorrect, the only remaining question is whether there is an alternative basis for affirming the ruling of the trial court. There is not.

II.
The United States Supreme Court has said:
The vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: `What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recentnot due to the brutalities of ancient criminal procedure.'
United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (footnote and citation omitted). In a case dependant on eyewitness identification, the parties' counsel are entitled to conduct reasonable voir dire inquiry designed to draw out the prospective jurors' views on the reliability of eyewitness identification. Defense counsel's attempted questions in this case were reasonably calculated to do just that.
The majority opinion suggests that the questions counsel attempted to ask were logically unrelated to the prospective jurors' ability to entertain the possibility that there had been a misidentification in this case. See majority opinion at 6-7. That is too narrow a view. "`[C]ounsel *1109 must have an opportunity to ascertain latent or concealed prejudgments by prospective jurors[.]'" Stano v. State, 473 So.2d 1282, 1285 (Fla.1985) (citation omitted). The majority opinion indicates that the trial court's broad inquiries addressed to the prospective jurors as a group were sufficient, but "`[s]uch broad inquiries failed to call attention to specific matters which might lead the jurors to display disqualifying attitudes and preoccupations.'" Lavado v. State, 469 So.2d 917, 921 (Fla. 3d DCA 1985), dissenting opinion adopted by Florida Supreme Court, Lavado v. State, 492 So.2d at 1323. There should be a new trial.[*]
NOTES
[1] MR. PEREZ: Have you ever had someone walk up to you and say Bonnie

THE COURT: Do not pretry the case, Mr. Perez.
MR. PEREZ: Judge
THE COURT: No do not pretry the case.
MR. PEREZ: Your honor may I have a sidebar.
THE COURT: No. You may go to the to your next question.
MR. PEREZ: Do you believe that people make mistakes or can make mistakes in terms of misidentification or misidentifying?
THE COURT: Mr. Perez move on. You're pretrying the case. You are going into what you believe are the facts what the possible defense may be.
MR. PEREZ: Actually
THE COURT: Do not pretry the case. Move on please. Anybody believes that human beings are perfect and they cannot make mistakes. If anybody believes that raise your hands and we can discuss it.
Let the record [reflect] that no hands have been raised. Let's move on.
[2] At this stage, counsel was free to exercise any remaining peremptory challenges. Gilliam v. State, 514 So.2d 1098 (Fla.1987).
[3] Although we need not directly so hold, it seems likely that, because of the failure to challenge the jury after the trial court had dealt with the issue, the point was not preserved for appellate review. Joiner v. State, 618 So.2d 174 (Fla.1993).
[4] It is true that the trial judge erroneously characterized the questioning as "pretrying," the case, but see Dicks v. State, 83 Fla. 717, 93 So. 137 (1922)(forbidden "pretrial" in jury selection involves attempt to commit jurors to particular verdict if hypothetically stated facts are established at trial), rather than, as we see it, as improperly "prearguing" the case. That a correct (or harmless) ruling is based upon an incorrect or imprecisely stated ground does not, however, affect its affirmability. Stuart v. State, 360 So.2d 406 (Fla. 1978).
[*] Although the majority opinion expresses doubt on the point, see majority opinion at 1106 n. 3, I believe that the issue was fully preserved for appellate review as required by Joiner v. State, 618 So.2d 174 (Fla.1993). At the conclusion of jury selection, but before the jury was sworn, the court returned to the question of voir dire on the issue of misidentification. This was evidently done in response to a Joiner objection made by defense counsel. (There is an apparent error in the transcript which omits the actual Joiner objection, but both parties agree that there must have been a Joiner objection at that point).

After discussion, the trial court agreed to propound further questions to the prospective jurors as a group, and the discussion ensued which is set forth at pages 1105 and 1106 of the majority opinion. This was the proceeding which resulted from the Joiner objection.
During those proceedings, the trial court again refused to allow defense counsel to conduct individualized voir dire about the issue of misidentification. At the conclusion of the Joiner-initiated proceeding, it was not necessary for defense counsel to state another Joiner objection. The point is preserved for appellate review.