GREEN, J.
Appellant, John Mosely, appeals his conviction and sentence for strong armed robbery. Mosely argues that the trial court abused its discretion by refusing to allow defense counsel the opportunity to individually question each prospective juror about his defense of misidentifieation. He also asserts that on the motion for new trial, the trial court erroneously failed to consider and rule on his claim that the weight of evidence did not support the jury’s verdict. We find no merit to his second argument, but we do, however, agree with his first argument, and reverse for a new trial.
Rose Marshall was walking toward North Miami Avenue and 57th Street when she saw an African-American man wearing a dark red short-sleeved T-shirt walking toward her on the opposite side of the street. She could not recall the color of the man’s pants. He was carrying a gas tank in one hand, and something Marshall described as “a long tool used to cut grass with,” presumably a weed whacker, in the other hand. Marshall also noticed that this man crossed over to the same side of the street that she was on after they had passed one another. Marshall testified that moments after she saw the man cross the street, she heard a loud noise from behind that startled her. When she turned around, the man was there, grabbed for a gold chain she was wearing, tore it off and caused her to stumble. The man fled the scene when another man approached. Marshall did not notice if the man had the gas tank or weed whacker, or if he dropped them either before or after he stole the chain.
As Marshall went to a nearby house to call the police, she observed the man entering another home nearby, and exit wearing a beige shirt. She saw the man again shortly thereafter on her way to the *280 supermarket, and pointed him out to an off-duty police officer, Officer Narron, that was on the scene. Officer Narron testified at trial that the man Marshall pointed out was wearing red pants and a blue shirt. After Officer Narron approached the man and called out to him, the man fled, jumping over a nearby fence. Officer Narron then lost sight of the man, and set up a perimeter in the area in order to apprehend him.
Fifteen minutes later, Officer Narron and another officer witnessed John Mosely enter a tailor shop and exit through the rear door. Soon after that, Mosely was apprehended by a police canine unit in a vacant lot and arrested. At the time of his arrest Mosely was wearing a dark red tank top and dark red pants. There was no evidence as to what happened to the beige or blue shirt, other than they were not found within the established perimeter.
During voir dire, defense counsel questioned the prospective jurors individually regarding their feelings about the state’s burden of proof, the reasonable doubt standard, and the defendant’s right to silence at trial. After permitting defense counsel to individually question five potential jurors about their ability to understand and accept the defense of misidentification, the trial judge stopped the individual questioning, and questioned the jury panel collectively on the issue. Defense counsel requested a sidebar in order to discuss the matter with the court. The court denied the request and instructed defense counsel to move on to another topic. The appellant preserved this issue by later renewing his objection to the court’s refusal to allow individual questioning about his defense prior to the jury being sworn.
At trial, the victim, Rose Marshall, testified that the man who stole her gold chain was the same man she saw get arrested in the vacant lot. However, when asked to identify her attacker in court, Marshall pointed to a different man in the courtroom audience, not to Mosely. Mosely was convicted of strong armed robbery and resisting without violence, and sentenced to 35 years in prison, with a thirty-year minimum mandatory term. Mosely appeals, claiming that the trial court abused its discretion in prohibiting defense counsel from individually questioning the prospective jurors on the defense of mis-identification, the sole defense presented at trial. We agree.
Although trial judges are vested with broad discretion in regulating the extent and scope of the examination of prospective jurors,[1] such discretion must be tempered with the right of both the state and defense to examine jurors orally on their voir dire which is guaranteed by Fla. R.Crim. P. 3.300(b). In construing this rule, we recently held that the trial court cannot question prospective jurors on critical areas such as the presumption of innocence, burden of proof, and the right to silence, and then preclude counsel from further individual examination under the guise that it would be repetitive. Miller v. State, 785 So.2d 662, 663 (Fla. 3d DCA 2001)(citing Sanders v. State, 707 So.2d 664, 668 (Fla.1998)); see also Miller v. State, 683 So.2d 600, 602 (Fla. 2d DCA 1996)(stating that “[ajlthough the trial judge certainly has the discretion to limit repetitive and argumentative voir dire, a trial judge must allow counsel the opportunity to ascertain latent or concealed prejudgments by prospective jurors.”).
The issue of misidentification was the core or critical issue in this case, and we conclude that the defendant was effectively denied his right to a fair and impartial jury *281 by virtue of the trial court’s restriction on the individual questioning of the venire panel about his sole defense. See, e.g., Lavado v. State, 492 So.2d 1322, 1323 (Fla.1986)(holding that trial court’s refusal to allow defendant to question prospective jurors on their willingness to accept a voluntary intoxication defense denies the defendant’s right to fair and impartial jury); Walker v. State, 724 So.2d 1232, 1234 (Fla. 4th DCA 1999)(finding that trial court erred in refusing defendant’s request to question prospective jurors as to their willingness to accept the defense of entrapment). In Lavado, the Supreme Court adopted the dissent of Judge Daniel Pearson in Lavado v. State, stating, inter alia, that
[wjhat is a meaningful voir dire which will satisfy the constitutional imperative of a fair and impartial jury depends on the issues in the case to be tried. The scope of voir dire therefore “should be so varied and elaborated as the circumstances surrounding the juror under examination in relation to the case on trial would seem to require.... ” Thus, where a juror’s attitude about a particular legal doctrine ... is essential to a determination of whether challenges for cause or peremptory challenges are to be made, it is well settled that the scope of the voir dire properly includes questions about and references to that legal doctrine even if stated in the form of hypothetical questions.
469 So.2d 917, 919-20 (Fla. 3d DCA 1985)(Pearson, J., dissenting)(internal citations omitted).
Thus, for the foregoing reasons, we reverse the appellant’s conviction and remand for a new trial.

. See Williams v. State, 744 So.2d 1103, 1106 (Fla. 3d DCA 1999).