801 So.2d 44 (2001)
Anthony Joseph FARINA, Appellant,
v.
STATE of Florida, Appellee.
No. SC93050.
Supreme Court of Florida.
August 16, 2001.
Rehearing Denied November 29, 2001.
*48 Jeffrey L. Dees, Daytona Beach, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Anthony Joseph Farina appeals the imposition of the death penalty upon resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we affirm the death sentence.
Anthony[1] and his brother Jeffery Farina were convicted and sentenced to death for the fatal shooting of Michelle Van Ness during the robbery of a Taco Bell restaurant in Daytona Beach in 1992. The record shows that both brothers planned and participated in the robbery, but that Jeffery actually fired the fatal shot, shot two other restaurant employees, and stabbed the assistant manager in the back after his gun misfired.
On appeal, this Court affirmed Anthony's conviction for first-degree murder, but vacated his death sentence and remanded for a new sentencing proceeding due to error in the jury selection process. See Farina (Anthony) v. State, 679 So.2d 1151, 1157 (Fla.1996). We also remanded codefendant Jeffery's case for resentencing due to the same error. See Farina (Jeffery) v. State, 680 So.2d 392, 396-99 (Fla.1996). On remand, a joint penalty proceeding was held before a new jury. By a vote of twelve to zero the jury recommended the death penalty for each defendant. The trial court followed the jury recommendation and sentenced both defendants to death.
In imposing the death penalty on Anthony, the trial judge found five aggravating factors: (1) defendant was previously convicted of another capital felony or felony involving the use or threat of violence based upon the attempted murders of the other restaurant employees; (2) the murder was committed to avoid arrest; (3) the murder was committed for pecuniary gain; (4) the murder was heinous, atrocious, or cruel (HAC); and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). The judge found three statutory mitigating factors *49 (Anthony had no significant history of prior criminal activity; he was an accomplice in the capital felony committed by Jeffery and his participation was relatively minor; he was eighteen years old at the time of the crime) and fifteen nonstatutory mitigating factors (abused and battered childhood, history of emotional problems, cooperation with the police, involvement in Christianity and Bible study courses while in prison, good conduct in prison, remorse for what happened, assertion of a positive influence on others, no history of violence, abandonment by his father, poor upbringing by his mother, lack of education, good employment history, and amenability to rehabilitation). The trial judge concluded that the aggravating factors far outweighed the mitigating factors, and imposed the death penalty.
On appeal after resentencing, this Court vacated Jeffery's death sentence based upon our decision in Brennan v. State, 754 So.2d 1 (Fla.1999), that the imposition of a death sentence for a crime committed when the defendant was sixteen years of age constitutes cruel or unusual punishment in violation of article I, section 17 of the Florida Constitution. See Farina (Jeffery) v. State, 763 So.2d 302, 303 (Fla. 2000).
On appeal, Anthony raises twelve issues, including two claims presented in a supplemental brief which relate to the appropriateness of his death sentence now that Jeffery has been sentenced to life imprisonment. Anthony claims that: (1) the State improperly used peremptory challenges to strike two African-American jurors; (2) the trial court erred in denying his motion in limine to prohibit the introduction of his taped conversation with his brother Jeffery; (3) the trial court erred in denying his motion to suppress this taped conversation; (4) the trial court erred in denying his motion to sever his resentencing proceeding from Jeffery's; (5) the trial court erred in admitting victim impact evidence, in allowing the evidence to become the main feature of the trial, and in refusing to give a requested limiting instruction; (6) the HAC aggravating circumstance was improperly found; (7) the CCP aggravating circumstance was improperly found; (8) the avoid arrest/witness elimination aggravating circumstance was improperly found; (9) the death sentence is not proportionally warranted; (10) Florida's death penalty is unconstitutional on numerous grounds; (11) he is entitled to a new sentencing proceeding so that the judge and jury can consider Jeffery's life sentence under Brennan in determining the appropriate sentence for him; and (12) death is disproportionate in light of other cases where the triggerman received a life sentence.
In issue one Anthony claims that the State improperly used peremptory challenges to exclude two African-American jurors (Edwards and Hilton) and that the court failed in its duty to critically examine these challenges. Under Melbourne v. State, 679 So.2d 759 (Fla.1996), and its progeny, the following procedure must be followed for challenging peremptory strikes of prospective jurors: (1) the objecting party must make a timely objection, must show that the venire person is a member of a distinct racial group, and must request that the court ask the striking party the reasons for the strike; (2) if the first step is met, the court must ask the proponent of the strike to explain the reason for the strike; and (3) if the reason given is facially race-neutral and the court believes that given all the circumstances surrounding the strike, the explanation is not pretext, the strike will be sustained. Id. at 764. In the third step, the court's focus is on the genuineness of the explanation, not its reasonableness. See id. On *50 appeal, reviewing courts must be mindful of two guiding principles: peremptory challenges are presumed to be exercised in a nondiscriminatory manner; and the trial court's decision, which turns primarily on an assessment of credibility, will be affirmed on appeal unless clearly erroneous. See id.; Rodriguez v. State, 753 So.2d 29, 40 (Fla.2000), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000).
In the instant case, the State peremptorily struck juror Edwards on two grounds: that she expressed concern over her son's guilt for a drug conviction; and that she voiced hesitancy about the death penalty. The trial judge ruled that "prosecutors very frequently challenge jurors for those types of reasons. So I find it to be a race-neutral reason that is very common in our system for challenging jurors." The State peremptorily struck juror Hilton on the grounds that she had been thirty minutes late in arriving for voir dire on the previous day, was tentative in her support of the death penalty, was a member of a church that was involved in a prison ministry program, and might allow feelings of Christian forgiveness to creep into her decision. The trial judge ruled that he was "supposed to just sustain the challenge if I find that the attorney making it is making it in his or her world of good faith, not whether I agree with it or not. And I don't think that [the prosecutor] is making a racial-based challenge ... And I don't think [the prosecutor] is lying to me." Based upon our review of the voir dire record and the fact that the court's rulings turned on an assessment of the genuineness of the State's reasons for striking these two prospective jurors, we conclude that the trial court's ruling was not clearly erroneous and Anthony is not entitled to relief on this claim.
Issues two and three both involve a recorded conversation between the brothers in the back seat of a police car, which was recorded without the brothers' knowledge. During this conversation, both Anthony and Jeffery made incriminating statements about the crime. The taped conversation was introduced during the original guilt phase trial and this Court found no error in its admission. See Farina, 679 So.2d at 1157. After we remanded for a new sentencing proceeding, Anthony filed a motion in limine to prohibit the use of the statement in the penalty phase on the grounds that it was not relevant to any aggravating circumstance. See Kormondy v. State, 703 So.2d 454, 463 (Fla.1997) (explaining that evidence presented by the State during the penalty phase must be directly related to proving a statutory aggravating circumstance). Anthony also filed a motion to suppress the statement, claiming that the police intentionally violated criminal procedure statutes and rules in obtaining the statement. After hearing, the trial court denied the motion in limine and struck the motion to suppress as repetitive.
The State argues that because the taped conversation was properly admitted during the guilt phase of Anthony's first trial and the sentencing jury would have heard the statements had this Court not remanded the case for a new sentencing proceeding, there is no error in admitting the taped conversation. We do not agree with the State that a resentencing jury is entitled to hear everything that was introduced during the guilt phase of the trial. Evidence presented by the State during the penalty phase must be relevant to an issue properly being considered during that phase, such as an aggravating circumstance. See Kormondy. However, the evidence presented here is unlike the situation in Kormondy where the court committed reversible error by allowing testimony regarding statements made by the defendant in jail in which he expressed *51 his intent to kill in the future. We concluded that "a statement allegedly made in jail (after the relevant criminal episode) as to a future intent to kill [cannot] shed[ ] any light on Kormondy's intent at the time of the crime" and thus was not relevant to the avoid-arrest aggravating factor. Kormondy, 703 So.2d at 462.[2] In the instant case Anthony discussed the crime and the measures that he took to subdue the victims. In discussing the two employees who were able to untie their hands and call the police, Anthony expressed regret that he had failed to cut the phone line to the restaurant as he had planned. He also stated that he should have "sliced their ... throats" and barred the "freezer doors, so they couldn't open them." This statement was relevant to the avoid-arrest aggravating circumstance as it explains Anthony's state of mind at time of incidentan intent, albeit unsuccessful, to eliminate the witnesses. Thus, we find no error in denying Anthony's motion in limine and admitting the taped statement during the resentencing proceeding.
During his original trial, Anthony moved to suppress the taped conversation on Fourth Amendment and privacy grounds. The trial court denied the motion and this Court affirmed on direct appeal. See Farina, 679 So.2d at 1154. On appeal, Anthony also claimed that the admission of Jeffery's statements at their joint trial violated his Sixth Amendment confrontation rights, but we found no merit to this claim. See id. at 1155-57 (finding that circumstances surrounding Jeffery's taped statements had sufficient indicia of reliability to rebut the presumption of unreliability that normally attaches to such hearsay evidence). During the resentencing proceedings, Anthony filed another motion to suppress the taped statements, arguing that in order to set up the circumstances in which the brothers could engage in this conversation the police departed from the procedural rules relating to booking procedures and did not comply with statutory provisions prohibiting juvenile inmates from having contact with adult inmates. He further argued that the police failed to obtain the statutorily required authorization prior to recording the conversation. The State filed a motion to strike Anthony's motion to suppress, arguing that these issues either were or could have been raised in the first motion to suppress filed before the original trial and that Anthony had not demonstrated any basis for relitigating the suppression issue mid-trial. After hearing, the trial court granted the State's motion to strike.
The alleged "new" grounds asserted in Anthony's resentencing motion to suppress, i.e., Jeffery was a juvenile who was transported with adults and the police departed from normal booking procedures, are in fact not new and could have been raised in the original motion to suppress. The other ground asserted, i.e., lack of authorization for the recording, was raised and rejected in the original trial motion. See Harvard v. State, 414 So.2d 1032, 1037 (Fla.1982) (rejecting appellant's attempt to seek review of issues in appeal after resentencing proceeding which could have been raised in first appeal). Thus, we find that the resentencing judge properly struck Anthony's motion to suppress.
Anthony also contends that he should have been granted a severance because the taped conversation heard by the jury contained several statements by Jeffery that were also considered in aggravation *52 against him (issue 4). Specifically, the jury heard Jeffery's recounting of conversations with a fellow inmate in which he explained that he shot Van Ness because he was having a "boring day" and with the psychiatrist in which he claimed that he "felt nothing" when he shot Van Ness. Jeffery also expressed his belief that the employee that he had stabbed was the victim that was going to die. Anthony contends that the failure to sever the resentencing proceedings denied him the right to confront Jeffery about these statements and the right to an individualized sentencing process.
Under Florida Rule of Criminal Procedure 3.152(b)(1)(A), a severance of defendants may be ordered when it is appropriate to promote a fair determination of the guilt or innocence of the defendants. A severance is not necessary when the evidence is "presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence." Coleman v. State, 610 So.2d 1283, 1285 (Fla.1992). Denial of a motion for severance is subject to review for an abuse of discretion by the judge. See Johnson v. State, 720 So.2d 232, 236 (Fla.1998) (finding that judge did not abuse his discretion by denying defendant's motion for severance). In Anthony's first appeal, this Court found no violation of his confrontation rights based upon the admission of these statements in the guilt phase. See Farina, 679 So.2d at 1154-55. As introduced in the resentencing proceeding, the jury was apprised as to which defendant made the various statements. Thus, because we have already determined that the taped conversation was properly admitted during the penalty phase (issue two above), we find that the judge did not abuse his discretion in denying the motion to sever the proceedings here and Anthony is not entitled to relief.
In his fifth issue, Anthony makes three claims relating to victim impact evidence. He contends that the trial court erred in: (1) admitting victim impact evidence; (2) allowing the evidence to become the main feature of the trial; and (3) failing to give a requested limiting instruction. Anthony filed a pretrial motion to exclude victim impact evidence on a number of grounds. After hearing, the trial court denied the motion but cautioned that the victim impact evidence could not become the main feature of the trial. The court also ordered the State to provide defense counsel with a list of the proposed victim impact witnesses and their relationship with the victim, which the State provided. At the resentencing proceeding, twelve of Van Ness' friends and family members testified about the impact of her murder.
Both the Florida Constitution and the Florida Statutes instruct that victim impact evidence is to be heard in considering capital felony sentences in our state. See art. I, § 16, Fla. Const.; § 921.141(7), Fla. Stat. (2000); see also Windom v. State, 656 So.2d 432, 438 (Fla. 1995). The evidence presented in the instant case is the type of testimony that the United States Supreme Court held that a state may choose to admit without violating a defendant's constitutional rights. See Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). This evidence, accordingly, complies with our decision in Anthony's original direct appeal. See Farina, 679 So.2d at 1158 (explaining that on remand the State may present victim impact evidence as long as it comes within the parameters of Payne). Thus, we find no error in the admission of this evidence.
*53 Further, our review of the record does not bear out Anthony's assertion that this evidence became the central feature of the resentencing proceeding or that it was so unduly prejudicial that it rendered his trial fundamentally unfair. See Payne, 501 U.S. at 825, 111 S.Ct. 2597. While such testimony may be inherently emotional, the United States Supreme Court has recognized that "victim impact evidence serves entirely legitimate purposes." Payne, 501 U.S. at 825, 111 S.Ct. 2597. "[T]here is nothing unfair about allowing the jury to bear in mind the harm [that the killing caused] at the same time as it considers the mitigating evidence introduced by the defendant." Id. at 826, 111 S.Ct. 2597. Finally, we find no instructional error relating to the admission of the victim impact evidence. The jury was instructed that the evidence could not be considered as an aggravating circumstance, but should only be considered "insofar as it demonstrates [Van Ness's] uniqueness as an individual human being and the result of loss to the community and its members by her death." This instruction is entirely consistent with section 921.141(7) and complies with the guidelines that we explained in Windom. See also Alston v. State, 723 So.2d 148, 160 (Fla.1998) (approving following instruction regarding victim impact evidence: "[Y]ou shall not consider the victim impact evidence as an aggravating circumstance, but the victim impact evidence may be considered by you in making your decision in this matter."). Thus, no relief is warranted on this issue.
In his next three issues, Anthony claims that the trial court erroneously found the aggravating circumstances of HAC (issue six), CCP (issue seven), and avoid arrest/witness elimination (issue eight). For the reasons expressed below, we find that the aggravating circumstances were properly found in this case.
The HAC aggravator focuses on the means and manner in which death is inflicted and the immediate circumstances surrounding the death. See Brown v. State, 721 So.2d 274, 277 (Fla. 1998). "Fear and emotional strain may be considered as contributing to the heinous nature of the murder, even where the victim's death was almost instantaneous." Preston v. State, 607 So.2d 404, 410 (Fla. 1992). Additionally, this aggravator pertains more to the victim's perception of the circumstances than to the perpetrator's. See Hitchcock v. State, 578 So.2d 685, 692 (Fla.1990).
In the instant case, the trial court cited Van Ness's "real and excruciating" mental anguish and her acute awareness of her impending death to support its HAC finding. There is testimony that Van Ness was very upset throughout the crime and had to be calmed by her co-workers. The record also shows that she had her hands tied behind her back and was conscious as two of her co-workers were shot. Before being shot in the head, Van Ness witnessed Jeffery shoot one of her co-workers in the chest, shoot a second in the jaw, and attempt to shoot the second in the chest as well, only being thwarted when the gun misfired. Thus, the record supports the HAC aggravating circumstance.
In order to establish the CCP aggravator, the evidence must show
that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold), and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated), and that the defendant exhibited heightened premeditation (premeditated), and that the defendant had no pretense of moral or legal justification.
*54 Jackson v. State, 648 So.2d 85, 89 (Fla. 1994) (citations omitted); accord Walls v. State, 641 So.2d 381 (Fla.1994). While "heightened premeditation" may be inferred from the circumstances of the killing, it also requires proof beyond a reasonable doubt of "premeditation over and above what is required for unaggravated first-degree murder." Walls, 641 So.2d at 388. The "plan to kill cannot be inferred solely from a plan to commit, or the commission of, another felony." Geralds v. State, 601 So.2d 1157, 1163 (Fla.1992). However, CCP can be indicated by the circumstances if they point to such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course. See Bell v. State, 699 So.2d 674, 677 (Fla.1997).
In the instant case the following facts support the CCP aggravating circumstance: this specific Taco Bell restaurant was chosen as the target for the robbery because Anthony was familiar with its employees and procedures; Anthony visited the restaurant earlier in the evening to see who was working and the brothers discussed the fact that Anthony knew three of the employees present that night; the brothers purchased bullets for their gun before the robbery; the employees were rounded up and confined to small area where they would be easier to control; the brothers' discussion just before the shooting began and Anthony's comment that it was "[Jeffery's] call" shows intent to carry out plans to kill; and none of the victims offered resistance. Therefore, we find competent, substantial evidence in the record supporting the finding that the murder was cold, calculated, and premeditated without any pretense of moral or legal justification. Accordingly, we hold that the trial court did not err in its finding of the CCP aggravating circumstance.
The avoid arrest/witness elimination aggravating circumstance focuses on the motivation for the crimes. See Jennings v. State, 718 So.2d 144, 151 (Fla. 1998). Where the victim is not a police officer, "the evidence [supporting the avoid arrest aggravator] must prove that the sole or dominant motive for the killing was to eliminate a witness," and "[m]ere speculation on the part of the state that witness elimination was the dominant motive behind a murder cannot support the avoid arrest aggravator." Consalvo v. State, 697 So.2d 805, 819 (Fla.1997); accord Gore v. State, 706 So.2d 1328, 1334 (Fla.1997). However, this factor may be proved by circumstantial evidence from which the motive for the murder may be inferred, without direct evidence of the offender's thought processes. See Preston, 607 So.2d at 409.
In other cases, this Court has found it significant that the victims knew and could identify their killer. While this fact alone is insufficient to prove the avoid arrest aggravator, see Consalvo, 697 So.2d at 819, we have looked at any further evidence presented, such as whether the defendant used gloves, wore a mask, or made any incriminating statements about witness elimination; whether the victims offered resistance; and whether the victims were confined or were in a position to pose a threat to the defendant. See Jennings, 718 So.2d at 151.
In Jennings, in which this Court concluded that the avoid arrest aggravator was properly found, the circumstances were very similar to the instant case: the victims knew the defendant and could identify him; the defendant did not use a mask, and stated that if he ever committed a robbery, he would not leave any witnesses; the victims had their hands bound behind their back and there was no evidence of resistance; the victims were confined *55 to a freezer and the defendant could have eliminated any threat by simply closing and securing the freezer door. See id. Instead, Jennings slashed the throats of all three victims consecutively, a "manner of killing ... that could [not] be considered reactionary or instinctive and further supports the finding that the dominant motive for killing at least two of the victims was to avoid identification." Id.
The sentencing order in the instant case cites the following facts which support the avoid arrest aggravator: the brothers knew that Anthony was likely to be recognized by some of the employees because of his former employment at the restaurant; Anthony visited the restaurant shortly before the robbery to see who was working and verified that some of the employees would be able identify him; the brothers were armed with a gun, knife, and rope and wore gloves during the crime; after receiving the money without resistance from the employees, the brothers moved the victims to a confined area where they could be easily controlled; just before the shootings began, the brothers discussed the need to eliminate witnesses; and the victims were consecutively shot execution style. As in Jennings, there was no resistance from the victims and the brothers could have simply locked them in the freezer and made their escape. Instead, Jeffery shot as many of the victims as possible and then resorted to stabbing the last victim with the knife, when the gun misfired. Only by luck did the other three employees survive, as Jeffery shot the two men in locations that could have been fatal (chest and face) and attempted to shoot the manager in the head, but instead stabbed her in the head and back when the gun misfired. Additionally, Anthony's statements regarding the brothers' botched attempt at eliminating the witnesses reveal his thought processes at the time of the crime. Under these facts, we find that the avoid arrest aggravating circumstance was properly found.
Issue ten claims that Florida's death penalty statute is unconstitutional on a number of grounds. This Court has repeatedly rejected the various challenges to the death penalty statute raised by Anthony. See, e.g., Provenzano v. Moore, 744 So.2d 413 (Fla.1999), cert. denied, 528 U.S. 1182, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000); Jones v. State, 701 So.2d 76, 79 (Fla.1997); Medina v. State, 690 So.2d 1241, 1244 (Fla.1997). Additionally, the Florida Legislature recently amended the death penalty statute to provide that execution shall be by lethal injection unless the sentenced person affirmatively elects to be executed by electrocution. See § 922.105, Fla. Stat. (2000). Therefore, we find no merit to this claim.
Finally, Anthony raises three issues relating to the proportionality of his death sentence (issues nine, eleven, and twelve). He claims that death is not the appropriate sentence in his case because he was not the shooter and was a minor participant in the homicide and because the actual triggerman received a life sentence. While the trial court recognized that Anthony did not fire the shot that killed the victim, it also found that "his participation in the crime was major." Additionally, the court concluded that "[Anthony's] involvement was so complete that he was a full partner with his brother who did kill, and that without his full participation, the death would not have occurred."
Under Florida law, when a codefendant is equally culpable or more culpable than the defendant, disparate treatment of the codefendant may render the defendant's punishment disproportionate. See Downs v. State, 572 So.2d 895 (Fla. *56 1990); Slater v. State, 316 So.2d 539 (Fla. 1975). Thus, an equally or more culpable codefendant's sentence is relevant to a proportionality analysis. See Cardona v. State, 641 So.2d 361, 365 (Fla.1994).
Like Anthony, Jeffery was tried on the same charges and convicted, but he is not subject to the death penalty because his age of sixteen at the time of the offense prevents him from receiving the death penalty as a matter of law. See Brennan, 754 So.2d at 5-6 (ruling that imposition of death sentence on a sixteen-year-old defendant constitutes cruel or unusual punishment under Florida Constitution). Rather, Jeffery received the maximum sentence possible for his crimesa life sentence, without the possibility of parole for twenty-five years. See Farina, 763 So.2d at 303.
Under Brennan, when a defendant is sixteen years of age, his or her youth is such a substantial mitigating factor that it cannot be outweighed by any set of aggravating circumstances as a matter of law. In this context, then, Jeffery's less severe sentence is irrelevant to Anthony's proportionality review because the aggravation and mitigation in their cases are per se incomparable. Under Brennan, death was never a valid punishment option for Jeffery, and Anthony's death sentence is not disproportionate to the sentence received by his codefendant. See Henyard v. State, 689 So.2d 239, 254-55 (Fla.1996) (concluding that defendant's death sentence was not disproportionate to fourteen-year-old codefendant's life sentence); cf. Larzelere v. State, 676 So.2d 394 (Fla.1996) (holding that codefendant's acquittal was irrelevant to proportionality review of defendant's death sentence because codefendant was exonerated from culpability as a matter of law). Thus, we conclude that Anthony's death sentence is not disparate when compared with Jeffery's life sentence and find no merit to issues eleven and twelve.
Finally, we consider Anthony's remaining proportionality claim that death is not the appropriate sentence in comparison to other capital cases (issue nine). In deciding whether death is a proportionate penalty, this Court considers the totality of the circumstances of the case and compares the case with other capital cases. See Johnson, 720 So.2d at 238; Urbin v. State, 714 So.2d 411, 416-17 (Fla.1998). Proportionality review requires a discrete analysis of the facts, entailing a qualitative review by this Court of the underlying basis for each aggravator and mitigator rather than a quantitative analysis. See Urbin, 714 So.2d at 416. It is not a comparison between the number of aggravating and mitigating circumstances. See Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990).
Based upon our review of all the aggravating and mitigating factors, including their nature and quality according to the specific facts of this case, we find that the totality of the circumstances justifies the imposition of the death sentence here. Anthony was a major participant in an armed robbery which included a cold, calculated, and premeditated plan to eliminate any witnesses. The four witnesses were shot in either the head or chest in quick succession. The last witness was stabbed only because the gun misfired while pointed at her head. This case is proportionate to other cases where we have upheld the imposition of a death sentence. See, e.g., Jennings, 718 So.2d at 154 (finding death sentence proportionate where murders were cold, calculated, and premeditated and committed during armed robbery to avoid arrest, and defendant had no significant history of prior criminal activity); Stein v. State, 632 So.2d 1361 (Fla. 1994) (same); LeCroy v. State, 533 So.2d *57 750 (Fla.1988) (affirming death sentence where murder was committed during course of armed robbery to avoid arrest, and defendant had no significant history of prior criminal activity).
Accordingly, for the reasons expressed above, we find no merit to the issues raised in this appeal and affirm Anthony Farina's sentence of death.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, LEWIS, and QUINCE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE, J., concurs.
ANSTEAD, J., concurring in part and dissenting in part.
While I agree with almost all of the majority's analysis, I cannot agree that the defendant here is not entitled to have a new sentencing before a judge and jury that, unlike the judge and jury here, are informed and able to fully consider the critical fact that the codefendant and actual killer has received a life sentence for the same murder.
The majority fails to consider that both brothers received a death recommendation by the same jury and were sentenced to death by the same judge, before our decision in Brennan. Hence, the sentencing jury and judge were operating under the misconception and false assumption that both Jeffery and Anthony would be put to death for their participation in this crime, while in reality it turns out that the more culpable of the two, the actual killer, will not be put to death. Such patent disparity has consistently resulted in this Court either reducing a codefendant's sentence to life or directing a new sentencing proceeding where the sentencing jury and judge are properly informed of this critical factor. We should do no less here.
While we have held in Scott v. Dugger, 604 So.2d 465 (Fla.1992), that the subsequent reduction of a codefendant's sentence to life may be asserted in postconviction proceedings as grounds for a new sentencing proceeding, we have also acted to grant such relief ourselves. We acted in Scott to actually set aside the defendant's death sentence after we had reduced an equally culpable codefendant's sentence to life. We should not delay by forcing Anthony to raise this issue in postconviction proceedings.
In Scott we dealt with a virtually identical situation and held that the subsequently imposed life sentence of a codefendant required the vacating of defendant's death sentence where the record showed that the defendant and codefendant were equally culpable parties in the murder and had similar backgrounds.[3] In fact in Scott we expressly noted that the sentencing judge, upon being apprized of the fact that the codefendant had his death sentence reduced to life by this Court, indicated that she would not have sentenced Scott to death if she had known the codefendant would receive a life sentence.[4] Hence, we should acknowledge that Anthony's sentencing jury did not know that Jeffery would receive a life sentence and, in fact, assumed the opposite, and now provide for *58 a sentencing by a jury that will be properly informed as to what actually happened to Jeffery. As we emphatically declared in Scott, the codefendant's life sentence is obviously a critically important factor to be considered by those charged with determining another defendant's fate. See id. at 468. The relevancy and materiality of such information is only heightened when the actual killer is later sentenced to life.
It is, of course, undisputed in this case that Anthony's sixteen-year-old brother, Jeffery, was the actual killer of the victim. Furthermore, Jeffery was not only the actual killer, but took the lead in the attacks on the other victims. Under our case law, Anthony's sentence must now be re-evaluated and Jeffery's life sentence specifically considered in any re-evaluation. Obviously the imposition of a life sentence for the actual killer, Jeffery, should be considered in determining an appropriate sentence for Anthony. Thus, at the least, Anthony should receive a new penalty phase.
As in Scott, this Court itself has acted many times to reduce the death sentence of a codefendant where the actual killer has received a life sentence. See, e.g., Hazen v. State, 700 So.2d 1207 (Fla.1997) (holding that nontriggerman accomplice to murder could not be sentenced to death, when more culpable nontriggerman accomplice received sentence of life imprisonment in a plea bargain); Curtis v. State, 685 So.2d 1234 (Fla.1996) (finding that death sentence for crime of first-degree murder was disproportionate where defendant was not actual killer and actual killer was sentenced to life imprisonment); Slater v. State, 316 So.2d 539 (Fla.1975) (holding that imposition of death penalty against accused, who was convicted of first-degree murder occurring during a robbery, denied equal justice where accused had been an accomplice and where the "triggerman," who entered a plea of nolo contendere to charge of first-degree murder, was only sentenced to life imprisonment). These cases mandate a reconsideration of Anthony's death sentence by a judge and jury who may properly consider the life sentence subsequently ordered by this Court for Jeffery.
The case for reconsideration here is even more compelling because of the extensive evidence of mitigation presented in Anthony's case. The trial court, in a detailed evaluation, considered three statutory mitigators and some fifteen separate nonstatutory mitigators.[5] In addition to Anthony not being the actual killer, it is important to note that, save Jeffery being two years younger than Anthony, the trial court found that Anthony had actually demonstrated more mitigation than Jeffery. For example, the record reflects without dispute that Anthony was sexually and physically abused repeatedly as a child.
The record reveals a horrendous childhood for both the Farina brothers. Their father was approximately forty years older than their mother and when he left the mother when the boys were still preschool age, he also abandoned the boys completely and had no contact with them. The *59 mother was an alcoholic who would move on a whim (over twenty moves in Anthony's eighteen years; from Wisconsin to Illinois to Florida to Illinois to California to Florida, etc.), took up with a series of men who did nothing to support the family, and offered no guidance to the boys. From a young age the boys were often supporting the family and various adults and young children who were living with them by whatever jobs they could get, by scavenging for recyclable materials to sell, or by shoplifting at the mother's request (actually, the testimony was that the mother forced the boys into shoplifting by telling them that they would do it if they loved her and their young sister). Various relatives, social workers, and law enforcement officers also reported that the boys lived in deplorable conditions (dog feces on the floors of the living quarters, filth and squalor, no decent food). Sometimes they shared a one-room hotel room or trailer with as many as ten to fifteen people.
Anthony was physically abused by one of his stepfathers and placed in a state facility for eighteen months because of the abuse. His mother never visited or called him during that time. Anthony was also sexually abused as a young boy and as a result developed an inability to control his bowels. While Anthony has no formal record of criminal activity, he has committed a number of petty crimes including shoplifting and using illegal drugs (marijuana and crack). Despite all of this, it appears that Anthony had a good employment history, albeit at low-paying jobs. Both boys received an erratic education and Anthony never finished one year of school in the same school.
We should not allow this case to become another instance where "hard facts make bad law." The "hard facts" here are the exceptionally egregious circumstances in which an innocent victim's life was taken and several other innocent victims were seriously injured. And, if that was not enough, we essentially have a case of children killing children. Notwithstanding these admittedly "hard facts," however, we must adhere to our legal precedents, or explain why not. In this instance I fear the majority has failed to properly apply the important legal principle, long established and consistently upheld in death penalty jurisprudence, mandating that the sentence imposed upon a codefendant, especially a codefendant who is the actual killer, be considered by the jury, the trial court, and this Court, when determining or reviewing the defendant's sentence.
As this Court stated in Slater: "We pride ourselves in a system of justice that requires equality before the law. Defendants should not be treated differently upon the same or similar facts. When the facts are the same, the law should be the same." 316 So.2d at 542. Thus, at a minimum, this case should be remanded for a new penalty phase proceeding so that a sentencing judge and jury may consider the life sentence imposed upon Jeffery in determining an appropriate sentence for Anthony.
PARIENTE, J., concurs.
NOTES
[1] Because the codefendant brothers share the same surname, this opinion will refer to the appellant and his codefendant by their given names to avoid confusion.
[2] Kormondy allegedly stated that if he ever got out of jail he intended to kill the murder victim's wife because she could identify him and would also kill an acquaintance who had given information to the police after Kormondy admitted his involvement in the crime.
[3] Although we acted to reduce Scott's sentence to life, we held that a defendant is entitled to raise a codefendant's subsequent life sentence as a ground for collateral review under rule 3.850. See id. at 469.
[4] We noted: "This is in sharp contrast to the instant case where Judge Schaeffer stated `I will have to go on record at the time of my sentence if the co-defendant [had] already been sentenced to life, I would have sentenced Mr. Scott to life despite the jury's recommendation.'" Id.
[5] As noted by the majority opinion, the judge found three statutory mitigating factors (no significant history of criminal activity, Anthony was an accomplice in capital felony committed by Jeffery and his participation was relatively minor, age of eighteen at the time of the crime) and fifteen nonstatutory mitigating factors (abused and battered childhood, history of emotional problems, cooperation with the police, involvement in Christianity and Bible study courses while in prison, good conduct in prison, remorse for what happened, assertion of a positive influence on others, no history of violence, abandonment by his father, poor upbringing by his mother, lack of education, good employment history, and amenability to rehabilitation).