# Supreme Court of Florida

_____

No. SC15-1697
_____

**ANTHONY JOSEPH FARINA**,
Petitioner,

vs.

**STATE OF FLORIDA**,
Respondent.

[May 12, 2016]

PER CURIAM.

Anthony Farina, Jr., seeks review of a trial court order that dismissed his

motion for a new trial based on newly discovered evidence alleging potential juror

misconduct in the guilt phase of his trial. This Court has jurisdiction because

Farina's death sentence was vacated and remanded for further proceedings, but his

murder conviction remains. See State v. Fourth Dist. Ct. of Appeal, 697 So. 2d 70,

71 (Fla. 1997) (explaining that this Court has "exclusive jurisdiction to review all

types of collateral proceedings in death penalty cases" and that "[t]his includes

cases in which this Court has vacated a death sentence and remanded for further

penalty proceedings") (emphasis added). Additionally, we treat his petition filed

under Florida Rule of Appellate Procedure 9.142(c) as an appeal from a final order,

because the trial court dismissed his motion alleging newly discovered evidence.[1] We conclude that the trial court erred in summarily dismissing Farina's motion as premature.

In 1992, Farina was convicted of first-degree murder and six other offenses stemming from a robbery of a Taco Bell. He was sentenced to death for the murder and to six consecutive life sentences for armed robbery, burglary, conspiracy to commit murder, and three counts of attempted first-degree murder. We affirmed all of Farina's convictions and all six non-capital sentences, but vacated his death sentence and remanded for a new penalty phase. Farina v. State, 679 So. 2d 1151, 1152-53 (Fla. 1996). After the new penalty phase, he was sentenced again to death and we affirmed his death sentence. Farina v. State, 801 So. 2d 44, 48 (Fla. 2001). Later, we affirmed the denial of his initial motion for postconviction relief and denied his habeas petition before this Court, Farina v. State, 937 So. 2d 612, 616 (Fla. 2006), as well as the denial of his first successive motion for postconviction relief, Farina v. State, 992 So. 2d 819 (Fla. 2008) (table decision).

---

1. Florida Rule of Appellate Procedure 9.142(c) applies to proceedings that invoke this Court's jurisdiction to review nonfinal orders issued in postconviction proceedings.

Subsequently, Farina filed a federal habeas petition, which was denied by the federal district court. See Farina v. Sec'y, Dep't. of Corr., No. 6:06-cv-1768-Orl-36GJK, 2012 WL 1016723 (M.D. Fla., Mar. 26, 2012). On appeal, the Eleventh Circuit Court of Appeals granted habeas relief, set aside Farina's death sentence, and remanded the case to the trial court for a new penalty phase, based on the court's conclusion that the "prosecutor's injection of religious authority into a capital sentencing proceeding . . . diminished the jury's sense of responsibility in a way that undermined the reliability of its death recommendation[,]" and that appellate counsel was ineffective for failing to raise the issue on appeal. Farina v. Sec'y, Fla. Dep't. of Corr., 536 Fed. App'x 966, 968-70 (11th Cir. 2013), cert. denied, 135 S. Ct. 475 (2014).[2]

After Farina's death sentence was vacated by the Eleventh Circuit, but prior to the commencement of the new penalty phase, on May 11, 2015, Farina filed a motion based on newly discovered evidence. His motion alleged that, based on an anonymous letter his counsel received on May 12, 2014, his counsel recently discovered evidence that demonstrated two of the jurors in Farina's original trial in 1992 were biased because they allegedly had a relationship with the elected State Attorney, who personally prosecuted Farina at his initial trial.

---

2. Although Farina's death sentence has been vacated, his six life sentences for the noncapital offenses remain undisturbed.

The trial court did not order a response from the State or hold a case management conference, but instead concluded that the motion was premature because Farina was awaiting resentencing, and therefore found that his "conviction is not final for purposes of filing a successive postconviction motion."

We disagree that the motion should have been dismissed as premature. While motions for collateral relief under Florida Rule of Criminal Procedure 3.851 generally apply to "postconviction proceedings that commence upon issuance of the appellate mandate affirming the death sentence," litigants filing newly discovered evidence claims are held to strict time limits, or otherwise must demonstrate that they could not have known about the evidence at the time of trial by the exercise of due diligence. See Long v. State, 183 So. 3d 342, 345 (Fla. 2016); Glock v. Moore, 776 So. 2d 243, 251 (Fla. 2001) (declaring that newly discovered evidence claims in death penalty cases must be brought within one year after the "evidence was discovered or could have been discovered through the exercise of due diligence"). As we explained in Jones v. State, 709 So. 2d 512 (Fla. 1998), newly discovered evidence claims must meet two prongs:

> First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by use of diligence." Torres-Arboleda v. Dugger, 636 So. 2d 1321, 1324-25 (Fla. 1994).

Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. Jones[v. State], 591 So. 2d [] 911, 915 [(Fla. 1991)].

Jones, 709 So. 2d at 521.

This Court has previously recognized the appropriateness of adjudicating motions based on newly discovered evidence filed after the conviction was final but "[p]rior to the resentencing proceeding." Way v. State (Way IV), 760 So. 2d 903, 907-08 (Fla. 2000). In Way v. Dugger (Way II), 568 So. 2d 1263, 1267 (Fla. 1990), this Court upheld defendant Way's murder convictions but vacated his death sentence and remanded to the trial court for resentencing. Prior to the resentencing proceeding, Way filed an emergency motion under Florida Rule of Criminal Procedure 3.850 in the trial court, alleging he had obtained newly discovered evidence that he claimed was withheld by the State. Way IV, 760 So. 2d at 907. The trial court summarily denied relief on the rule 3.850 motion and proceeded with the resentencing. Id. After Way was resentenced to death, he appealed the trial court's summary denial of his 3.850 motion. Id. at 908. We reversed the summary denial, stayed Way's direct appeal in this Court, and remanded to the circuit court for an evidentiary hearing. Way v. State, 630 So. 2d 177, 179 (Fla. 1993).

We make clear what was not explicitly stated in Way: motions for a new trial based on newly discovered evidence should not be delayed until after the

death sentence is final, but instead, should be brought as soon as possible after the discovery of the new evidence. Indeed, our prior pronouncement in Glock that newly discovered evidence claims in death penalty cases "must be brought within one year of the date such evidence was discovered or could have been discovered through the exercise of due diligence" is consistent with this result. 776 So. 2d at 251. Farina's motion was filed exactly 364 days after counsel discovered the new evidence. If Farina had waited until after the conclusion of his resentencing proceedings, he risked that his motion alleging newly discovered evidence would be denied as untimely. See id. at 250-51; see also Jones, 709 So. 2d at 521.

While the purpose of rule 3.851 is to bring orderly structure to motions for collateral relief, review of newly discovered evidence claims that could result in a new trial should not be postponed until after resentencing or the appeal of the sentence.[3] Certainly, if a defendant awaiting resentencing sought to present evidence through a motion based on newly discovered evidence that another witness admitted to the crime for which the defendant was convicted, that motion should not await resentencing.

---

3. To the extent that rule 3.851 might conflict with the due diligence prong of newly discovered evidence, a clarifying amendment to that rule may be necessary.

This case exemplifies why. Over two decades have already passed since the original trial. One of the potential witnesses related to Farina's claim is now deceased. If Farina, as the trial court ruled, were to wait to refile his motion alleging newly discovered evidence after his sentence becomes final, there is a real possibility that other potential witnesses who might have knowledge related to his newly discovered evidence claim will have died or their memories will have faded. Perhaps equally as important, if the allegations in the motion for a new trial based on newly discovered evidence are rejected on the merits, then any potential taint surrounding the original conviction is removed. For all of these reasons, motions alleging newly discovered evidence should be heard and addressed at the earliest possible opportunity.

The trial court in this case should not have dismissed as premature Farina's motion based on newly discovered evidence, but should have, instead, proceeded to address the motion on the merits. Accordingly, we reverse and remand to the trial court to reinstate Farina's motion alleging newly discovered evidence and address the motion on its merits.[4]

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
LEWIS, J., concurs in result.

---

4. In reversing and remanding, we express no view on the merits of Farina's newly discovered evidence claims.

CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Because I conclude that this Court lacks jurisdiction over Farina's "Petition Seeking Review of Nonfinal Order (Capital Case)," and that even if this Court had jurisdiction, Farina would not be entitled to relief on the merits of the petition, I dissent from the majority's decision to grant relief.

## I. Additional Facts

After the Eleventh Circuit Court of Appeals set aside Farina's death sentence, but prior to the commencement of the new penalty phase, Farina's former trial counsel received an anonymous letter on May 12, 2014, stating:

> To whom it may concern:
>
> I write this with heavy hearth [sic]. The Taco Bell murders were appalling but the treatment of Anthony Farina who did not injure or kill anyone is also appalling. He is guilty but the punishment is not justified. Life must be given.
>
> Because of inappropriate actions by the court, I am giving info for a new trial. The jury was handpicked. The jury foreman was a very best friend of Gus Sliger. Also on the jury was one of Gus Sliger's Party Chiefs Skip (nickname) Campbell. I suspect other connections to Gus Sliger. In other words, John Tanner had a handpicked jury with cooperation with those in charge of the jury notices.
>
> Explore this and you will find out.

John Tanner was the elected state attorney who personally prosecuted Farina at his initial trial in 1992. The same day that Farina's former trial counsel received the letter, he mailed it to Farina's current counsel.

Upon current counsel's receipt of the letter, he reviewed the record from the 1992 trial and found that a seated juror named William Campbell stated in voir dire that he worked as a "party chief" on a surveying crew. According to Farina, when specifically asked by Farina's trial counsel, Mr. Campbell stated that he worked for Sliger & Associates in Port Orange, Florida. Farina's counsel then reviewed the campaign contribution records for John Tanner's 1988 and 1992 campaigns for state attorney. The records indicate that Sliger & Associates donated $750 to Tanner's successful 1988 campaign and $250 and a $130 in-kind donation of wood to Tanner's unsuccessful re-election campaign in 1992. Mr. Campbell did not disclose during voir dire that his employer contributed to Tanner's campaigns.

Farina's review of the record also revealed that the jury foreman was a man named Mr. Durant. Mr. Durant was specifically asked during voir dire if he had any "friends, associates or relatives" within the court system. Mr. Durant did not disclose that he was friends with Gus Sliger, whose company contributed to Tanner's campaigns.

Just shy of one year after receiving the letter, on May 11, 2015, Farina, using the letter as a basis for his claim, filed a second successive motion for postconviction relief under rule 3.851,[5] asserting

> that newly discovered evidence reveals that at least one biased juror was empanelled in the 1992 proceedings that resulted in his current convictions and non-capital sentences. Neither the prosecutor in Mr. Farina's case, nor the empanelled juror in question disclosed the political relationship between the juror's employer and the prosecutor

and "the jury foreman failed to disclose his close friendship with the donor to the prosecutor's campaigns." Without requiring a response from the State or holding a case management conference, the trial court summarily dismissed the motion as premature on the grounds that Farina's conviction was "not final for purposes of filing a successive postconviction motion" because resentencing was pending on the first-degree murder charge. In dismissing the motion without prejudice, the trial court granted Farina leave to amend the motion within thirty days after his sentence for first-degree murder becomes final. Farina then sought relief in this Court by filing his "Petition Seeking Review of Nonfinal Order (Capital Case)" "under Rule 9.412(b)(2) of the Florida Rules of Appellate Procedure."

---

5. The majority labels Farina's second successive postconviction motion as a "motion for a new trial based on newly discovered evidence alleging potential juror misconduct in the guilt phase of his trial." Majority op. at 1. The motion was actually titled, "Defendant Anthony Joseph Farina's Successive Rule 3.851 Motion to Vacate Judgment of Conviction and Sentences."

## II. Treatment of the Petition as a Final Order

In treating the petition as an appeal from a final order, the majority ignores the fact that the trial court's order dismissed Farina's successive motion without prejudice and granted leave to Farina to amend and refile the motion after his resentencing.

[T]his Court has held:

> [T]he test employed by the appellate court to determine finality of an order, judgment[,] or decree is whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected.

State v. Gaines, 770 So. 2d 1221, 1223-24 (Fla. 2000) (quoting S.L.T. Warehouse Co. v. Webb, 304 So. 2d 97, 99 (Fla. 1974)). Accordingly, "[a]n order which dismisses a complaint with leave to amend is not final." McGuire v. Florida Lottery, 17 So. 3d 1276, 1277 (Fla. 1st DCA 2009) (citing Eagle v. Eagle, 632 So. 2d 122 (Fla. 1st DCA 1994)). The order dismissing Farina's successive motion as premature therefore is not a final order because judicial labor is still required to effectuate a termination of the case. Cf. State v. Delvalle, 745 So. 2d 541, 542 (Fla. 4th DCA 1999) ("The order granting the Defendant's 3.800(a) motion is not a final order, as judicial labor, i.e., resentencing, is still required.").

## III. Dismissal of Successive Motion for Postconviction Relief

The majority "disagree[s] that [Farina's] motion should have been dismissed[,]" majority op. at 4, and holds that motions for postconviction relief filed under rule 3.851 that are based on "newly discovered evidence claims that could result in a new trial should not be postponed until after resentencing or the appeal of the sentence[,]" majority op. at 6. But this is contrary to the plain language of rule 3.851. The title of the rule is "Collateral Relief <u>After Death Sentence Has Been Imposed</u> and Affirmed on Direct Appeal." (Emphasis added.) And the text of rule 3.851 states that it applies

> to all postconviction proceedings that commence upon issuance of the appellate mandate affirming the death sentence to include all motions and petitions for any type of postconviction or collateral relief brought by a defendant in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all postconviction motions filed on or after January 1, 2015, by defendants who are <u>under sentence of death</u>.

Fla R. Crim. P. 3.851(a) (emphasis added). Thus, Farina's second successive motion was not authorized by rule 3.851 because he is not under sentence of death.

The majority attempts to resolve this conundrum by stating,

> While motions for collateral relief under Florida Rule of Criminal Procedure 3.851 generally apply to "postconviction proceedings that commence upon issuance of the appellate mandate affirming the death sentence," litigants filing newly discovered evidence claims are held to strict time limits, or otherwise must demonstrate that they could not have known about the evidence at the time of trial by the exercise of due diligence.

Majority op. at 4. This statement is problematic for several reasons.

- 12 -

First, under rule 3.851, the requirement is that "[a]ny motion to vacate judgment of conviction and sentence of death shall be filed by the defendant within 1 year after the judgment and sentence become final." Fla. R. Crim. P. 3.851(d)(1). However, if "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence," Florida Rule of Criminal Procedure 3.851(d)(2)(A), then "any claim of newly discovered evidence in a death penalty case must be brought within one year of the date such evidence was discovered or could have been discovered through the exercise of due diligence[,]" Glock v. Moore, 776 So. 2d 243, 251 (Fla. 2001). Of course, these requirements presuppose that the claim is properly brought under rule 3.851 by a defendant who is under sentence of death.

Next, the majority opinion cites Way v. State (Way IV), 760 So. 2d 903 (Fla. 2000), for the proposition that "[t]his Court has previously recognized the appropriateness of adjudicating motions based on newly discovered evidence filed after the conviction was final but '[p]rior to the resentencing proceeding.' " Majority op. at 5 (quoting Way IV, 760 So. 2d at 907-08). But the majority has read something into Way IV that cannot be found there; nowhere in Way IV did we recognize that trial courts should adjudicate newly discovered evidence claims filed under rule 3.851 prior to resentencing. Rather, in Way IV, prior to his

- 13 -

resentencing proceeding, Way filed an emergency motion for postconviction relief in the trial court, alleging that the State committed a violation of the mandate of Brady v. Maryland, 373 U.S. 83 (1963), by withholding exculpatory photographs from the defense. 760 So. 2d at 907. The trial court summarily denied the motion and proceeded with the resentencing. Id. On direct appeal—after the resentencing—we affirmed the trial court's summary denial of postconviction relief based on Way's Brady claim. Id. at 915. We did not address the propriety or impropriety of the adjudication of a motion for postconviction relief based on newly discovered evidence prior to resentencing and we certainly did not in any way suggest that the summary denial of such a claim forms the proper basis for a direct appeal to this Court prior to resentencing.

## IV. Sufficiency of Successive Motion for Postconviction Relief

Even assuming that Farina's petition could properly be treated as an appeal from a final order and that it would have been appropriate for the trial court to adjudicate Farina's successive postconviction motion prior to resentencing, I would still affirm the trial court's summary dismissal because the allegations in Farina's motion did not provide a legally sufficient basis for relief.

In McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984), on which Farina relied in his motion, the United States Supreme Court

- 14 -

concluded that when juror bias is discovered after the trial, in order to be entitled to

a new trial

> a party must first demonstrate that a juror failed to answer honestly a
> material question on voir dire, and then further show that a correct
> response would have provided a valid basis for a challenge for cause.
> The motives for concealing information may vary, but only those
> reasons that affect a juror's impartiality can truly be said to affect the
> fairness of a trial.

In his successive motion, Farina described his burden as follows:

> Under Florida law, a defendant must satisfy two requirements
> to obtain relief based on newly discovered and otherwise admissible
> evidence. First, the defendant must assert facts that were "unknown
> by the trial court, by the party, or by counsel at the time of trial, and it
> must appear that defendant or his counsel could not have known them
> by the use of diligence." Jones, 591 So. 2d at 915 (quoting Hallman
> v. State, 371 So. 2d 482, 485 (Fla. 1979)); Fla. R. Crim. P.
> 3.851(d)(2)(A). Second, the defendant must show that "the newly
> discovered evidence [is] of such nature that it would probably produce
> an acquittal on retrial." Jones, 591 So. 2d at 915. The Jones standard
> is also applicable where "the issue [is] whether a life or a death
> sentence should have been imposed." Id. Mr. Farina's claim is
> analogous to a Jones claim, but the prejudice standard must
> necessarily be different because the issue before this Court is different
> than that which faced the Florida Supreme Court in Jones: Mr. Farina
> need not demonstrate that he would have been acquitted but for the
> empanelment of the biased juror; rather, he must show, as per
> McDonough, that the revelation of the previously concealed
> information "would have provided a valid basis for a challenge for
> cause." McDonough Power Equip., 464 U.S. at 556.

Farina asserted in his motion that he met the first prong of the Jones standard

because "[d]efense counsel could not have known or suspected that a juror would

fail to disclose his relationship with the prosecutor"

> [n]or could defense counsel have known or suspected <u>that the prosecutor . . . would fail to disclose that a prospective juror was a contributor</u>—as a result of being a high-ranking employee of a local, small business—<u>to the prosecutor's political campaigns</u>, or, at the very least, that the juror's direct employer was a political supporter of the prosecutor's political campaigns . . . . Furthermore, the existence of political relationships linking the juror to the prosecutor could not have been discovered through the exercise of due diligence within a year of Mr. Farina's sentences becoming final.

(Emphasis added.)

Farina's argument that he could not have known that a juror would fail to disclose that he was a contributor to the prosecutor's campaign is totally irrelevant. Farina claimed not that there was some undisclosed political relationship between the prosecutor and jurors, but that two jurors failed to disclose that a person with whom they were acquainted had contributed to the prosecutor's campaigns. Further, Farina does not explain why he did not simply ask Mr. Campbell and Mr. Durant during voir dire whether they knew anyone who had contributed to the prosecutor's campaigns since he believes that such information would have demonstrated the jurors' bias against him.

Moreover, Farina cannot establish that had he known at the time of voir dire that Mr. Campbell's employer and Mr. Durant's friend contributed to the prosecutor's campaigns, such information would have provided the basis for a cause challenge. Farina did not allege in his motion that Mr. Campbell or Mr. Durant were even aware of Gus Sliger's campaign contributions. If they were not

- 16 -

aware of the contributions, they certainly could not have disclosed their existence or had any resulting bias towards the State or against Farina. Even if Farina had made such an allegation, to assert that knowledge of Sliger's contributions would have somehow biased Mr. Campbell and Mr. Durant against him would be purely speculative and would not warrant an evidentiary hearing.

## V. Conclusion

Because Farina has not been sentenced to death and because the order dismissing his second successive motion for postconviction relief was not a final order, his petition is not properly treated as an appeal from a final order denying postconviction relief in a capital case, and I would deny the petition for want of jurisdiction. Even if Farina's petition could properly be treated as an appeal from a final order denying postconviction review in a capital case, I would still deny relief on the basis that the trial court did not err in summarily dismissing the successive postconviction motion with leave to amend because the motion was insufficient on its face to demonstrate grounds for relief.

POLSTON, J., concurs.

An Appeal from the Circuit Court in and for Volusia County,
    Margaret Warren Hudson, Judge - Case No. 641992CF032105XXXAES

Garry Wood, Palatka, Florida, and Marie-Louise Samuels Parmer, Tampa, Florida,
    for Petitioner

- 17 -

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and James Donald Riecks, Assistant Attorney General, Daytona Beach, Florida,

for Respondent